## Hoskins v. Commonwealth.

### (Decided March 18, 1913.)

### Appeal from Lee Circuit Court.

1. Criminal Law—New Trial—When Granted in Criminal Case Parties Placed as Though There Had Been No Previous Trial.—When a new trial is granted in a criminal case, it places the parties where they were before the trial was had, and the defendant may be re-tried, as though there had been no previous trial of the case.

2. Criminal Law—Instructions—Must Be Read As A Whole—Self-defense.—The instructions of the court must be read as a whole, and it is not essential that self defense should be referred to in the first instruction in a case of homicide, where the proper instruction is given on self-defense.

3. Appeal—Bill of Exceptions—On Appeal Facts Determined From.—The court must determine the facts from the bill of exceptions, and reverse or affirm the judgment according to the facts. It is not bound by the conclusion of the circuit judge on the facts as shown by the bill of exceptions.

4. New Trial—When Grounds for Cannot Be Considered on Appeal.—A ground for new trial set up at the ensuing term, after the motion for new trial had been overruled at the previous term, cannot be considered on appeal.

G. W. GOURLEY, SUTTON & HURST and S. P. STAMPER for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

At the June term, 1910, of the Lee Circuit Court Garfield Hoskins was indicted for the crime of wilful murder committed by shooting and killing Harrison Hargis. Upon the first three trials of the case the jury failed to agree; upon the fourth trial he was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for life. He appealed to this court and on

the appeal the judgment was reversed for a defect in the indictment and in the self-defense instruction. (See Hoskins v. Com., 145 Ky., 580.) On the return of the case to the circuit court the indictment was set aside, and a new indictment found. Thereafter on the calling of the case for trial, the defendant entered a plea of not guilty, and of former jeopardy. The court sustained a demurrer to the plea of former jeopardy and the defendant excepted. Thereupon the case coming on for trial on the plea of not guilty, the jury returned a verdict finding him guilty as charged and fixing his punishment at confinement in the penitentiary for life. The defendant appeals from the judgment entered on the verdict.

The facts of the case are in substance these:

Bruce Sewell, Wiley Sewell and Joe Godfrey were sitting on a pile of saw logs. Hoskins came by on his way to dinner; they called to him and he sat down with them. Wiley Sewell had a half pint of whiskey. They sent up town and got some coca cola, and all drank the whiskey and coca cola. While they were still sitting there, Harrison Hargis came up and called to the two Sewells to come to him. They went to him, and while they were talking with him, Godfrey and Hoskins joined them. The parties were all negroes. Hargis and Wiley Sewell began a friendly scuffle, in which Sewell threw Hargis. When Hargis got up he felt in his pockets and said he had lost one dollar and five cents. All of the parties present except Hoskins turned their pockets inside out to convince Hargis that they did not have his money. Hargis intimated that Hoskins had his money, and appellant said to him that he did not have any money. Godfrey, in looking around, found the money on the ground where it had fallen out of Hargis' pocket in the scuffle. They all then went to the saw logs and sat down. Hargis then asked Hoskins why he did not turn his pockets out like the other boys, and he answered that Hargis knew he didn't have his money; that he did not even have the money to pay his part of the coca cola they had bought. Hargis then said to Godfrey, "Give that damned negro a dollar." Godfrey offered to do so, but Hoskins refused it. Godfrey and Hoskins then started towards Hoskins' home. When they had gone a short distance, Hoskins concluded that he wanted to make friends with Hargis, and to that end he called to him to come to him. Hargis arose and started towards him, but when he had ad-

vanced only a few steps, Hoskins said to him, "Stop, Harrison, I know you." Hargis replied, "Negro, if you fool with me, I will make you leave this creek." Immediately Hoskins drew his pistol and fired at Hargis. Hargis turned and began running, saying, "Lord, don't let him kill me." As he fled with his back to appellant, he was shot in the back and killed. The proof for the Commonwealth is to the effect that Hargis was doing nothing when the first shot was fired, and that his hands were by his sides empty, and that he ran some fifteen steps after the first shot was fired before the second shot was fired. The appellant testified that when he called to Hargis, and Hargis started towards him, that Hargis had his hand in his pocket, and there was proof at the inquest over the body of Hargis that a barlow knife was found where he fell. The proof for the defendant also showed that the deceased had made threats that he intended to kill him, and that these threats had been communicated to him, that the deceased was a dangerous, quarrelsome and violent man when under the influence of liquor, as he was on that day, and that the knife, which was found open, was his knife.

It is insisted on these facts that the verdict is palpably against the evidence, but we cannot say that it is. The appellant himself called the deceased off the log. He called him, it is true, for a friendly purpose, and it would seem that all he had to do was to tell the deceased why he had called him. The deceased was manifesting no hostility to him or intention to hurt him before he called him, and, in addition to this, he shot the deceased in the back when he was fleeing for his life, according to all the evidence, and when he had no reasonable grounds to believe he was in danger at the hands of the deceased.

It is insisted that the court erred in sustaining the demurrer to the plea of former jeopardy, but there was nothing in the record to sustain this plea. The plea was based upon what had occurred in the case. When the juries failed to agree, the case stood just as though these trials had not been had, and when the defendant was convicted and secured a new trial on appeal to this court, the case stood, when the new trial was granted, as though there had been no previous trial of it. Section 270 of the Criminal Code provides:

"The granting of a new trial places the parties in the same position as if no trial had been had. All the testi-

mony must be produced anew, and the former verdict cannot be used or referred to in evidence or in argument.''

We have in a number of cases upheld this provision of the statute. The State in granting the right of appeal, or the right of new trial, may hedge the right about with such restrictions as it may see fit to impose, and so we have held that where a new trial is granted to one who has been convicted of manslaughter, under an indictment for murder, he is in the same position as if no trial had been had (Com. v. Arnold, 83 Ky., 1); and if a new trial is granted the first indictment may be dismissed and a new indictment found, the trial under the second indictment being had as though there had been no previous trial of the case. (Fane v. Com., 109 Ky., 545; Ward v. Com., 128 S. W., 72, and cases cited.) It is insisted for the appellant that the former indictment was at least sufficient to sustain a conviction for involuntary manslaughter. If the defendant had been acquitted under that indictment, a different question would be presented, but when he was convicted under that indictment, and obtained a new trial, he took it subject to the limitations imposed by the statute, and the case stood precisely as though no trial had been had.

It is insisted that the instructions of the court were erroneous in this that the first instruction did not use the words, ''not in his necessary or apparently necessary self-defense,'' but an apt and full instruction on self-defense was given, and the jury were told that if they believed these facts to exist, they should acquit the defendant. All of the instructions are to be read together. The jury could not possibly have been misled. In addition to this, under the first instruction the jury could not find the defendant guilty unless the killing was done feloniously, and this excludes the idea of self-defense. (Kalin v. Com., 84 Ky., 362-363.) The instructions are practically those we directed to be given on the former appeal.

It is also insisted that there was such misconduct of counsel on the trial that a new trial should be granted. The statement of the bill of exceptions on this subject is in these words:

''And thereupon the plaintiff's counsel proceeded to argue the case before the jury in the following order: 1st, J. M. McDaniel; 2nd, H. S. McGuire, County Attor-

ney; 3rd, Col. Thos. C. Johnson, Commonwealth Attorney. The said J. M. McDaniel, in behalf of the plaintiff, made a very bitter and vindictive speech, denouncing the defendant in unmeasured terms, and insisted that the jury bring in a verdict to hang the defendant, "so that they could go home and tell their wives that they had done their duty, and if they failed to hang him, their wives would look down on them as having failed to discharge their duty;" that this appeal of counsel to the jury, with reference to their wives, was calculated and did greatly influence the jury to find the defendant guilty, and although counsel for defendant objected to the line of said counsel's argument, and the court sustained the objections and admonished the jury, still the effect of it was to poison the minds of the jury against the defendant and to cause them to bring in a verdict of guilty.

"The argument of H. S. McGuire, County Attorney, was more objectionable than that of Attorney McDaniel. He was more abusive of defendant than McDaniel and among other things which he stated to the jury, he said: 'Gentlemen of the jury, if you don't hang this defendant, or convict him, or if you let him go free and don't convict him, he will rape your wives and daughters, and my wife, and other men's wives, and it will be dangerous for them to walk the streets,' and this was objected to by counsel for the defendant at the time, and the court admonished counsel, and told the jury not to consider it; but the jury having already heard it, the effect was to greatly stir up the jury and poison their minds against the defendant, and cause them to bring in the verdict of guilty.

"Commonwealth's Attorney T. C. Johnson, being an officer and a man of great influence, and having the closing argument of the case, traveled out of the record and abused the defendant without any warrant whatever in the record, and among other things said: 'Gentlemen of the jury, you bring in such a verdict in this case as the people of Frankfort will not be ashamed of when they see the record in this trial, which will be sent there,' and counsel for defendant objected to the statement, and the court admonished the jury not to consider the statement; but it had its effect and influence on the jury."

It will be observed that in the above the circuit judge certifies to this court that J. M. McDaniel made a very bitter and violent speech, denouncing the defendant in

unmeasured terms, and that this appeal did greatly influence the jury to find the defendant guilty; that the effect of it was to poison the minds of the jury against the defendant and to cause them to bring in a verdict of guilty; that the county attorney was more abusive than McDaniel, and that the effect of what he said was to greatly stir up the jury and poison their minds against the defendant and cause them to bring in a verdict of guilty; that the Commonwealth's attorney traveled out of the record and abused the defendant without any warrant whatever in the record, and that this had its effect and influence on the jury. It is impossible to reconcile these statements of the bill of exceptions with the action of the circuit court in refusing to grant a new trial; we must assume that the learned circuit judge ruled consistently on the trial, and when we compare the language of the bill of exceptions with the language used in the grounds for new trial, it would seem probable that what the court meant to certify was that the defendant insisted that the argument had effect on the jury as stated, and that the circuit court did not mean to certify to it as his opinion on the question. But, however this may be, we must try the case on the facts shown by the record. It is the duty of the circuit court to certify the facts in the bill of exceptions. He is not required to certify his opinion or his conclusion on the facts. We must accept as true the facts he states, but we do not accept as correct his conclusions unless they are warranted by the record; for we must from the facts shown by the record determine for ourselves whether the judgment should be reversed.

It remains therefore to determine whether, upon the facts stated, there was such misconduct of counsel as to warrant a reversal. The bill of exceptions shows that McDaniel insisted that the jury bring in a verdict to hang the defendant so that they could go home and tell their wives that they had done their duty, and if they failed to hang him, their wives would look down on them, as having failed to discharge their duty. It also shows that the court sustained the objections of the defendant to this argument, and admonished the jury to disregard it. The same thing appears as to the statements made by the county attorney, and as to the statements made by the Commonwealth attorney. The statements of the county attorney were especially unwarranted, but the court not only sustained the objection to it and told the

jury not to consider it, but also admonished the counsel. There was no motion then or at any time to discharge the jury on account of misconduct of counsel. The defendant took the chance of being acquitted by the jury, without moving to discharge the jury. The argument of the county attorney was unwarranted and was calculated to prejudice the defendant, but we must assume that the jury obeyed the admonition of the court, who did everything he could do except discharge the jury, and this the defendant did not ask. The court could not discharge the jury without the defendant's consent; for, if he had done so, this would have operated as an acquittal. We do not attach so much importance to the remarks complained of in the speech of McDaniel or the Commonwealth attorney. It is not uncommon for prosecuting attorneys to urge the jury to do their duty on the ground that the responsibility for the enforcement of the law rests primarily with them. Such appeals are not beyond the pale of legitimate argument. It was not proper for the attorneys to refer to the wives of the jury or to the sentiment of the people of Frankfort when they should see the record of the trial. But as the court sustained the defendant's objection to all this and excluded it, we do not see that it could have been substantially hurtful. The statement of the county attorney would have been much more objectionable, if there had been anything in the trial to suggest the thought, but there was no question of race prejudice in the case, all of the parties present at the homicide being negroes, and no woman being concerned in the matter directly or indirectly. There had been no attack on the character of the defendant, and while the appeal by the county attorney was grossly improper, and was properly excluded by the circuit court, still when all this was done both the attorney and the jury being admonished by the court, we do not think that under all the facts of the case, a new trial should now be granted simply because this incident occurred on the trial.

The complaint that one of the jurors who tried the case was a member of the grand jury who returned the first indictment was not made in the circuit court in time, having not been presented until the next term, and after the motion for new trial had been overruled at the preceding term. In addition to this, under section 281 of the Code, the decisions of the circuit court on challenges

for cause are not subject to exception. This objection to the juror was a ground of challenge for cause, and the ruling of the court on such objections cannot be reviewed on appeal. No right of appeal existed in criminal cases prior to 1851, and when the Legislature, in 1851, allowed the right of appeal, it provided that certain matters should not be subject to exception, and this has been the law ever since, with a slight modification made recently, and not material here.

Judgment affirmed.