## Miller v. Commonwealth.

(Decided March 2, 1915.)

### Appeal from Lee Circuit Court.

1. Homicide—Voluntary Manslaughter—When Instruction on Properly Refused.—Hall and Flanery were engaged in a card game; Miller and Allen were looking on; the score was four and four; Hall claimed to have turned a jack, making him winner of the game, and picked up the stakes, his watch, and was putting it in his pocket, when Flanery drew a revolver on Hall. Miller then shot Flanery and killed him, claiming he did so to save the life of Hall. Held, it was not error to refuse an instruction on manslaughter. Miller was either guilty of murder, or justified upon the ground of defense of another and apparent necessity.

2. Homicide—Voluntary Manslaughter—Elements of.—Voluntary manslaughter is the unlawful killing of another intentionally, but in sudden heat of passion due to adequate provocation, and not with malice aforethought. Provocation is adequate when it is

such as is reasonably calculated to excite defendant's passions beyond his power of control; and when there is no evidence of premeditation or other proof of malice, adequate provocation will negative malice, and entitle the accused to an instruction on voluntary manslaughter.

8.    Criminal Law—Trial—Instructions—Charge as a Whole—Omission of Self Defense Qualification From Instruction on Homicide. —Where an apt and proper instruction on the law of self-defense is given, it is not error to omit from the instruction on homicide the qualifying phrase "not in his necessary or apparently necessary self-defense."

JOHN C. EVERSOLE for appellant.

JAMES GARNETT, Attorney General, and ROBERT T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

John B. Miller was convicted of the crime of wilful murder at the November, 1914, term of the Lee Circuit Court, his punishment being fixed at confinement during life in the penitentiary. He appeals.

On February 5, 1914, defendant and Major Allen, as they claim, started squirrel hunting, the defendant carrying a shotgun. They went to the home of Will Rader, where they met Rhodes Hall, and soon thereafter were joined by Preston Flanery.

The four then went up on a hill near Rader's house, and Flanery and Hall commenced playing a game of cards known as "Five," Miller and Allen looking on. Within a very short time Flanery was shot with the shotgun, the charge entering the side of his head at the right ear, killing him instantly. Only the four persons mentioned were present. Rhodes Hall was an uncle of Miller's wife; and Major Allen was Miller's first cousin.

Hall was the only witness introduced in chief by the Commonwealth, and relative to the killing he testified as follows: "Well, me and Flanery was playing cards; playing for a watch, two watches; and I beat him one game; was just playing two games for the watch, and we was four and four. The next game it was my deal, and I turned a jack and went out. And I pitched him the deck and he asked me what I meant. I said, 'I went out.' He said, 'The hell by G— you preach.' I says, 'Well, Press, you can call it hell or whatever you want to, I went out.' And I picked up my watch and was try-

ing to get it in my pocket all that time, and I couldn't get it in, I was sitting so low down; and I turned that way, and when I went to look down to put my watch in my pocket, the gun fired. It was so close to my head that it deafened me, and I turned my head, but the smoke was right in my face; and I looked back that way and Miller was raising up with the pistol. He raised up with the pistol and he turned down the hill and shot the pistol off twice in the ground, and I think then the pistol snapped, and he run off then, Miller did. Q. What was Press Flanery doing, anything to you or any one else at the time the gun fired? A. If he was doing anything I didn't know it. Q. Had he been doing anything there to you or to anyone else—were you in position to see? A. If he did, I didn't see; and I told you every word that me and Flanery had. * * * Q. What portion of time had elapsed between the time that you last looked at him (Flanery) until the shot was fired? A. Well, it might probably have been ten or fifteen seconds."

The defendant, Miller, testified that while Hall had his head down and turned rather sideways, placing the watch in his pocket, Flanery drew a 45-calibre revolver, cocked it, and was in the act of shooting Hall when he, Miller, shot Flanery with the shotgun and killed him; that, as Flanery fell, he, Miller, grabbed the revolver and discharged it into the ground twice when it caught foul and would not fire any more; that the reason he fired the pistol was because he saw Will Rader down the hill and was afraid Rader might come up there and take the revolver away from him and kill him with it.

Hall testified that he called for Rader to come up there, and Rader asked what was the matter, and on being told that a man had been killed, he said, "If they is a man killed I am not coming at all."

Allen testified substantially the same as Miller.

In rebuttal the Commonwealth proved by Robert Newland that he met the defendant on the day of the killing, and that Miller told him that he was compelled to kill Flanery because Flanery had fired two shots at Rhodes Hall.

1. Appellant's first contention is that the instruction on wilful murder was erroneous because of the omission therefrom of the qualifying phrase, "not in is necessary or apparently necessary self-defense."

It is usual to insert these words in the instruction on wilful murder, though there is no good reason for so doing. If the killing be unlawful, wilful, felonious and with malice aforethought, it could not be in self-defense; the one quality necessarily excludes the other. For this reason it has been held, and is the law in this State, that where an apt and proper instruction on self-defense is given, it is not error to omit the phrase mentioned from the instruction on wilful murder. See Catron v. Commonwealth, 140 Ky., 61, 130 S. W., 951; Hoskins v. Commonwealth, 152 Ky., 805, 154 S. W., 919.

2. It is contended by appellant that the trial court erred in failing to give an instruction on voluntary manslaughter.

Voluntary manslaughter is the unlawful killing of another, intentionally, but in sudden affray, or sudden heat of passion due to adequate provocation, and not with malice. Helm v. Commonwealth, 157 Ky., 751.

Provocation is adequate when it is such as is reasonably calculated to excite defendant's passions beyond his power of control. Campbell v. Commonwealth, 88 Ky., 402; Lewis v. Commonwealth, 93 Ky., 238; Crockett v. Commonwealth, 100 Ky., 382, 38 S. W., 674, 18 R., 835.

And where there is no evidence of premeditation or other proof of malice, then adequate provocation will negative malice and entitle the accused to an instruction on voluntary manslaughter. Helm Case, *supra.*

Flanery's reputation was shown to be that of a violent man; but he and Miller had never had any previous difficulty, and they had none on this occasion.

The accused shot Flanery solely because, as he claims, Flanery was about to shoot Rhodes Hall. If the testimony of the accused be true, then he was entitled to be acquitted upon the ground of defense of another and apparent necessity. If his testimony was untrue, and Flanery was not about to shoot Hall, then accused was guilty of murder, and there was nothing that would serve to extenuate the crime and entitle him to an instruction on voluntary manslaughter. There was no sudden affray or sudden heat of passion due to adequate provocation reasonably calculated to excite his passions beyond his power of control. He was either guilty of murder or the homicide was excusable.

Hall testified that Flanery was doing nothing so far as he saw, adding the latter words no doubt to avoid

flatry contradicting defendant; but he did contradict him, for it is absolutely unreasonable that Flanery, sitting within two feet of him, each facing the other, could have drawn and cocked and presented a weapon, a 45-calibre revolver, in his face without his seeing and hearing it.

3. The instruction given by the court on self-defense is criticised, appellant insisting that it was confusing. While it would have been better to have used the approved form of instruction, the one given, though inaptly expressed, sufficiently directed the jury to acquit defendant if they believed from the evidence that he had reasonable grounds to believe and did believe that deceased was about to kill or inflict great bodily harm upon Rhodes Hall, and there appeared to defendant, exercising a reasonable judgment at the time, no other safe or to him apparently safe way to avert the danger to Hall, real or apparent, except to shoot deceased; and we do not think the jury could have been misled to appellant's prejudice by the instruction given.

4. Appellant complains that the trial court erred in permitting Newland to testify in rebuttal that appellant told him on the day of the killing that he was compelled to kill Flanery because the latter had fired twice at Hall, insisting that this is evidence in chief.

When appellant was testifying on cross-examination he was asked by the prosecution whether he made such a statement to Newland, and he denied making it. The evidence of Newland was, therefore, admissible to impeach the defendant by proof of former contradictory statements; but, aside from that quality, it was also admissible as rebuttal testimony and substantive evidence for the reason that the statement in question constituted an admission contradictory of and wholly inconsistent with the testimony given by defendant upon the trial.

The appellant upon the evidence of himself and his kinsmen has been tried before a jury of his own county and of his own selection. They have found him guilty of murder as the evidence justified them in doing, and we are not disposed to disturb their finding.

Affirmed.