## McIntire v. Commonwealth.

(Decided April 26, 1921.)

### Appeal from Owsley Circuit Court.

1. Homicide—Taking Life of One in Defense of Another.—Where a combat is in progress between parties, and one not connected with the affray, intervenes and kills one of the participants, in defense of the other, the slayer is not justified in so doing, unless the one, who is defended, had the right to have, under the circumstances, slain his adversary himself.

2. Homicide—Peace Officer Charged With—Instructions.—When a peace officer is charged and upon trial for a homicide committed by him, the court is not required to instruct the jury upon the duties and rights of an officer, in making an arrest, unless the kill-

ing was in connection with and grew out of an offer or attempt of the officer to effect an arrest.

E. E. HOGG, F. J. EVERSOLE and C. C. TURNER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT— Affirming.

The appellant, Alex McIntire, was by indictment, accused of the crime of willful murder, and upon a trial was found guilty of the crime of voluntary manslaughter, and his punishment fixed at imprisonment for twenty-one years, by the verdict of the jury, and the judgment of the court. His motion for a new trial was overruled, and he has appealed. The grounds upon which he sought a new trial were (1) that the court misinstructed the jury and failed to properly instruct it, and (2) erred to his prejudice in the admission of testimony against him and in excluding evidence offered by him.

(a) Touching the admission of testimony, which was not competent as evidence against him, and the exclusion of competent evidence in his behalf, he, here, makes no complaint, and an examination of the record demonstrates, that there is no substantial ground for such contention, as no evidence, which he offered was excluded and the evidence admitted against him, to which he offered objections was competent and relevant.

(b) The contention, that the court erroneously failed to instruct the jury, and misinstructed it, as to the law of the case, makes necessary a statement of the facts, which were developed by the evidence. Richmond McIntire the father of appellant was a merchant, in a village called Hombre, in Perry county. His residence was a few steps away from the store house. The building, in which the elder McIntire kept his store was divided by a partition, making it into two rooms, in one of which the store of merchandise was kept and in the other room Robert McIntire, a brother of appellant, conducted a pool room. A door was in the partition which separated the rooms, and a door, also, opened into the pool room from the outside. Two young men, Link Cole and Nicholas Hurt, were at the place and in a more or less drunken condition from the effects of intoxicating liquors. Cole and two persons of the name of Maggard, accompanied by Robert McIntire,

went into the pool room and engaged or were preparing to engage in a game of pool. Hurt entered the room and declaring that no game should be played, either with his hand, or a cue scattered the ricked balls over the table. Robert McIntire thereupon declared, that he would not permit such conduct and that Hurt would have to pay for the game, which was then being played or the preparations for its playing commenced. Hurt declared that he would not pay for the game. Link Cole deposes, that he offered to pay for the game, but no other mentions this offer. At this point a fight was precipitated between Robert McIntire, Hurt and Cole. Cole deposes that McIntire was the aggressor, while McIntire deposes that Hurt and Cole were the aggressors. While this scuffle and fight was in progress, the elder McIntire attracted by the noise entered the room, and according to Cole made an assault upon Hurt, with a cue, which was broken over a table, in an attempt to strike Hurt with it. According to the McIntires, when the elder McIntire entered the room, he commanded the fighting to cease, when Hurt struck him in the face with a pool or billiard ball, cutting his face and causing the blood to run. He then retired into his store room to procure an axe to use in the fight, but returned to the pool room without it. In the meantime the mother of the appellant and Robert McIntire entered the pool room and participated in the scuffle and fighting, which was going on, and she claims that she was struck in the face by Cole, but he denies striking her or striking anyone during the melee. Robert McIntire, his mother and Cole were scuffling over the possession of a cue, upon one side of the room, and there is some evidence to the effect, that Hurt at some time during the melee was kicking Robert McIntire. The appellant, Alex McIntire, was nearby when the quarrel and fighting commenced, and although he could not see the parties, he could hear the noise of the fighting, and as he deposes, being a deputy sheriff he determined to arrest the participants, and to prepare himself to do so, to defend himself and to overcome opposition, if any, he went to the dwelling of a neighbor, which was from 75 to 150 yards distant from the pool room, to procure a pistol. On the way, he met the neighbor, to whom he said, that he desired the pistol to effect an arrest of the fighters, and when he had secured the pistol, he returned with it in his hand to the pool room. He further deposed that after

procuring the pistol, he came hurriedly back in the direction of the pool room, and again passed the neighbor, whose pistol he had secured, and that the neighbor said to him to hurry, that they were killing each other in the room, but not to use the pistol and he said that he would not, and when passing the window of the pool room, before arriving at the entrance, he heard shouting and looking in, he saw Hurt throw a pool ball at his father, Richmond McIntire, and saw the latter dodge it and heard the ball strike the wall with a loud report, and when he entered the room, Hurt was near a pool table, with a ball in his hand and in the attitude of throwing it at Richmond McIntire, who from the effects of a very recent severe attack of "flu" was partially incapacitated to use his arms, and he saw Cole, Robert McIntire and his mother over near the wall to one side, in a scuffle for the possession of a cue, and that the face of his mother bore evidences of rough treatment, in the way of a knot over her eye and discoloration around the eyes, and believing that his father, Richmond McIntire, was then and there in imminent danger of being killed by Hurt, he instantly shot Hurt to protect his father from death or serious bodily harm. Hurt immediately fell and died, and appellant then discharged a shot at Cole which, however, did not take effect upon him. The father, mother and brother of appellant substantially corroborate him as to the circumstances that existed at the time of the shooting, while Cole, as before stated, deposed that the elder McIntire, as well as Robert McIntire, had made an assault upon Hurt, and that the attack of Robert McIntire, upon Hurt precipitated the fighting which was going on when the elder McIntire arrived upon the scene and assaulted Hurt with a cue. The evidence of Cole, if believed, would have had the effect to deny the right of Richmond McIntire to have killed Hurt at the time he was shot and killed by the appellant. There was evidence from others which tended to prove that when appellant shot Hurt the elder McIntire was not in the room, and that Hurt was standing by a pool table, with his hand resting upon it, and not attempting to assault any one when shot. A pool ball was, however, lying in near proximity to the hand of Hurt after he was dead, which was some evidence tending to prove that he had the ball in his hand at the time he was killed. As a result of the fighting, it was proven that the face of the elder McIntire had a wound upon it,

and the face of the mother of appellant showed unmistakable evidences of having participated in a fight, or at least of having come in forcible contact with objects which would, and did produce contusions. There was, also, evidence, which tended to prove that appellant bore an unfriendly feeling toward Hurt previous to the homicide, and had recently threatened him with violence. Other witnesses deposed to the general bad moral character of appellant and his father. The court instructed the jury as to its duty in the event it should, from the evidence, believe, to the exclusion of a reasonable doubt, that appellant had committed the crime of murder and likewise touching the crime of voluntary manslaughter, defining each of such crimes as applied to the facts which the evidence conduced to prove. The usual instructions, touching the duty of the jury if it entertained a reasonable doubt of the guilt of accused of either murder or voluntary manslaughter, or if believing that he was guilty of one of the crimes but had a reasonable doubt as to which he was proven to be guilty of, were, also, given. The court, also, instructed the jury in substance that, although the accused shot and killed the deceased yet if it believed from the evidence that at the time and place the accused so shot and killed the deceased, he believed and had reasonable grounds for believing that either he or his father, Richmond McIntire, was then and there in danger of death, or the infliction of great bodily harm at the hands of deceased, and that it was necessary, or believed by the accused in the exercise of a reasonable judgment to be necessary, to shoot the deceased in order to avert the danger to himself or to his father, real or apparent, the jury should find him not guilty. No criticism is made of the instructions to the jury, except as regards the latter one. The accused did not pretend that he believed, or had any grounds for believing that he was in danger at the hands of the deceased when he shot him, nor is there evidence from any other witness to such effect, and the court should not have submitted such a pretended issue to the jury, but it is readily apparent, that the error of the court in so doing, could not have in any way prejudiced any right of the accused; nor is the criticism of the instruction based upon that harmless error. It is insisted for the accused that the right of one to take life in defense of another is controlled by the fact as to whether or not the circumstances of danger, real or apparent,

which surrounds the other at the time, would have rendered the homicide excusable upon the part of the other, if he had committed it himself. In other words, in the instant case, the accused was justified in killing the deceased in the defense of his father, only in the event that at the time, and under the circumstances, the father would have had the right to kill the deceased in his own necessary or apparently necessary defense. This is a correct statement of the law as administered in this jurisdiction where applied to facts such as existed here where there is evidence tending to prove that the person defended was the aggressor in the fighting and brought on the difficulty and thus would have no right to take the life of his adversary upon a claim of self defense. Utterback v. Com., 105 Ky. 723; McIntosh v. Com., 29 R. 1100; Watkins v. Com., 123 Ky. 817. Otherwise one might be justified in intervening, where two are participating in a fight and to take the life of one who was not at fault, and when his adversary could not rely upon a claim of self defense, if he should have killed him himself. The instruction here complained of did not limit the right of accused to kill the deceased in the defense of his father to the right which the father had at the time to have killed the deceased in his own necessary defense, but it permitted the acquittal of accused, if he, who was not present up to the time he shot deceased and knew nothing of the cause of the trouble, nor the acts of the participants preceding his advent into it, believed from the circumstances and acts he then saw that his father was in imminent danger at the hands of deceased. Such definition of the rights of the accused being more favorable to him than to which he was entitled, he cannot complain. It is, also, insisted for the accused that the court failed to instruct the jury as to the entire law bearing upon the case, in this, that it should have instructed the jury concerning the rights and duties of the accused as a peace officer in making arrests, and that the failure to do so prejudiced his substantial rights. That it is the right and duty of a deputy sheriff to arrest any one who commits a public offense in his presence or to arrest one of whom he has reasonable grounds to believe has committed a felony, whether or not committed in his presence, and that under the circumstances stated, he may make an arrest without a warrant, and in effecting an arrest may use such force as is necessary to accomplish it, and if resisted and his life endan-

gered, or he is in danger of serious bodily harm, he may defend himself even to the taking of life, if apparently reasonably necessary, to protect himself from such dangers, real or to him apparent there can be no doubt, but the mere fact of one being a peace officer does not authorize him to take life upon private grounds and not in the execution of the duties of his office, and when he does so the fact of his being an officer has no effect upon his rights, and he is amenable to the same laws which would apply to one, under similar circumstances, who is not an officer. Tucker v. Beliles, 153 Ky. 848; Read v. Com., 125 Ky. 126; Sterns v. Com., 124 Ky. 32. The accused does not pretend that he shot and killed deceased in the execution or attempted execution of any duty of his office. The entire evidence does not disclose any word or act which tends to prove, that he offered or attempted to arrest the deceased, or that there was any resistance by the deceased of an offer to arrest him. Probably, if accused had offered or attempted to arrest the deceased he would have submitted, but no opportunity was offered him to submit. True, the accused deposes that he heard the fighting, secured a pistol and went to the pool room with the intention of making arrests, but this purpose, if entertained by him, was abandoned as with an opportunity to do so, he made no effort to effect an arrest of any one, but immediately shot and killed one of the participants, and attempted to kill another. It was not the duty of the court to submit an issue upon which there was no evidence heard or given, nor to submit by instructions a ground of defense upon which the appellant does not himself rely, and which there was no evidence whatever to support. His testimony, as to the purpose for which he secured the pistol and his intention in so doing, was competent as affording an explanation of his conduct, as being without evil or unlawful motives, and as such he had the full benefit of it, but it should be borne in mind that he was not convicted for any act which he claims to have performed as an officer and looking to the performance of his official duties, and hence, the court was not in error in failing to give an instruction upon the rights and duties of a peace officer when effecting an arrest.

The judgment is therefore affirmed.