## Lee v. Commonwealth.

(Decided November 23, 1926.)

### Appeal from Laurel Circuit Court.

1. Homicide.—Evidence in prosecution for murder as to issue of self-defense held for jury.

2. Criminal Law—Jury's Decision on Question of Fact will Not be Disturbed on Appeal Unless Indicating Passion or Prejudice.— Jury's determination on question of fact will not be disturbed unless so flagrantly against evidence as to indicate passion or prejudice.

3. Homicide—Instruction on Issue of Willful and Felonious Killing Held Not Erroneous for Failure to Qualify by Adding, "And Not in His Necessary Self-Defense."—Instruction in murder prosecution, submitting issue of reasonable doubt as to whether defendant willfully and feloniously shot and killed deceased, held not erroneous for failure to qualify it by inserting the words, "and not in his necessary self-defense."

WILLIAM LEWIS & SON for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. T. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

The appellant, James Lee, was indicted in the Laurel circuit court charged with having killed and murdered Will Clark, and upon his trial he was convicted and sentenced to serve a term of 21 years' imprisonment in the penitentiary. He appealed to this court and the judgment was reversed in an opinion reported in 208 Kentucky 615, and which reversal was ordered upon the sole ground of important newly discovered evidence material to the defense and which defendant did not and could not have discovered by the exercise of reasonable diligence. After the filing of the mandate in the trial court a second conviction was had and defendant was therein punished by confinement in the penitentiary for eight years. His motion for a new trial was overruled, and he prosecutes this second appeal, relying by his counsel upon two grounds for a reversal of the judgment, which are: (1) That the verdict is contrary to and flagrantly against the evidence, and (2), erroneous instructions, which we will discuss in the order named.

In disposing of ground (1) it will be necessary to make a brief statement of the facts supplementary to what is stated in our former opinion. The parties are colored people, and Russell McKee is a bachelor negro living in the city of London and occupying a two-story dwelling. One evening in May, 1924, seven colored people, four men and three women, touring in an auto-

mobile sought lodging for the night at his house and he agreed to and did take them. In the early part of the evening defendant and deceased, Will Clark, the latter of whom was temporarily residing with McKee, appeared at the latter's house and the crowd as thus composed concluded they needed whiskey, and defendant and deceased were dispatched for that purpose. In due time they returned with three one-half gallon fruit jars of whiskey. After consuming a portion of it defendant went to his residence and spent the night and Clark went elsewhere for the same purpose. They both met at McKee's house early the next morning and they and others proceeded to consume one-third of the whiskey remaining from the previous night's consumption, a part of which defendant had carried with him to his house on departing the evening before. The principal part of the drinking on the next morning was in the bedrooms occupied by the traveling guests, and both defendant and deceased appear to have been liberal consumers. About 7:30 o'clock deceased and McKee retired to the kitchen and prepared breakfast for themselves. Just as deceased was finishing his breakfast defendant came from upstairs into the kitchen, but in the meantime he had in some manner obtained possession of the watch of deceased. On entering the kitchen the latter requested that his watch be returned to him and defendant, according to the testimony of McKee, ran his hands into the pockets of his pantaloons and said: "By G— there it is." Whereupon deceased inquired, "Ain't you going to give it to me?" Defendant answered in the negative and put his arms around deceased, when the latter replied, "Get away, we are too old to play; all I want is my watch;" that deceased then picked up a bottle off the window sill and McKee went between the two and requested that they have no trouble on account of the strangers who were in the house but not in the room. What then happened is thus told by McKee: "I pushed Bill (deceased) one way and Jim (defendant) the other and went out the door, and Jim run out behind me, and as I did that he rushed out and I started back, and I was about five feet from the door of the house, and I got back in the door and he pulled up and shot across like that." Directly after the first shot a second and the fatal one was fired; the first one, as testified to by defendant and as proven by the other facts and circumstances in the case, was aimed above deceased

and, according to defendant, was intended to frighten him. Defendant's version of what happened in the kitchen at time of the homicide is thus stated by him in his evidence: "I went on down into the kitchen and Bill said give me my watch, and I said, 'Will, I am going to give you your watch,' and Ross spoke up and said, 'Give it to him and let him do what he pleases with it,' and I said, 'I am going to do it,' and he said, 'You God damned son-of-a-bitch, you are going to give it to me now,' and he reached on the table and jerked up a butcher knife and Ross stepped between us and he jumped out and said, 'Because you have a pistol you think some one is scared of you,' and he kept on after me and I backed to the door, and just as he went to strike I fired a shot, and he turned around and fell and the butcher knife struck a cook stove, it was setting in front of the door, and there was another door set there going up stairs there, and it set in front of the door." None of the strangers who were lodgers in the house that night testified in the case, presumptively because they were without the jurisdiction of the court. So that, the only purported eye-witnesses to the homicide were McKee and defendant, the deceased being killed instantly and gave no dying declaration.

McKee returned to the house immediately following the fatal shot and discovering that deceased was dead or practically so, got upon his mule to ride into town and give the notice, and in doing so he informed several people of what had happened and a number of them soon thereafter went to the scene, but apparently the greater number of them found no one present. Practically all of them testified that the feet of deceased were partially out of the outer door with his head back in the room and the most of them saw no weapon or knife either on the floor or anywhere in the room, except some eating knives on the table that had been used in serving the breakfast. One witness testified to finding a butcher knife on the table, and Riley, the newly discovered witness, for whom the reversal of the first judgment was ordered, testified that he saw a butcher knife on the floor not far from deceased. It was not proven, however, by his testimony, nor that of any other witness that he was the first person in the room after the shooting. On the contrary, it appears from the testimony of McKee that he and some one or more of the lodgers were the first ones in the room

after the homicide was committed. Another witness for the Commonwealth by the name of Parman saw defendant fire the last shot after hearing the first one from a distance of about 300 yards where the witness was engaged in roofing a house, and he stated that defendant was going out of the room backwards at the time the last shot was fired and the witness did not see deceased at that or any other time.

Two juries have returned verdicts in the case, each of them discrediting the self-defense theory of defendant. At most, it can only be said upon that issue that the evidence is contradictory with, perhaps, its preponderance, as told by the witnesses, supporting the defense, and, of course, would have been sufficient to authorize the jury to acquit defendant upon that ground. However, we have continuously and without exception held that under such circumstances it was not only proper for the court to submit the issue to the jury, but that it was also the province of the latter to determine the fact, and unless such determination was so flagrantly against the evidence as to indicate passion or prejudice it would not be disturbed by the trial court on a motion for a new trial based on that ground, or by this court on appeal. Such holding has been so universal and continuous that we deem it unnecessary to cite supporting cases. There is no testimony in the case to show any bias or feeling of the witness, McKee, against defendant so as to impair the credibility of his testimony, and although there are some apparent minor contradictions therein, we are not prepared to say or hold that his testimony should be entirely discarded.

Moreover, the conduct of defendant immediately prior to the homicide does not completely harmonize with a peaceably inclined citizen, nor does it tend to prove that he was seeking to avoid trouble. His explanation of his repeated refusal to return to deceased the latter's watch, the possession of which by him was not attempted to be founded upon any valid reason, is not altogether consistent with upright conduct; nor have we overlooked that defendant carried with him on the fatal morning the trusted and ever-ready revolver. Nothing had occurred the night before justifying his arming himself, and we have likewise not overlooked the fact that his general moral character was impeached by the Commonwealth. We, therefore, conclude that this ground cannot be sustained.

The only criticism of the instructions under ground (2) is that the court did not qualify the leading instruction by inserting the words "and not in his necessary self-defense" in submitting to the jury the issue that they should believe from the evidence beyond a reasonable doubt that defendant wilfully and feloniously shot and killed deceased. Counsel for defendant contends that immediately following that language the quoted words should have been inserted. It might be that it would have been the better practice to have done so, but we have approved the same instruction in a number of cases where the court in subsequent instructions submitted the issue of self-defense and directed an acquittal if the jury believed that the killing was done in the exercise of that right. Instructions of a similar draft and with the same omission here complained of were approved in the case of Gordon v. Commonwealth, 136 Ky. 508; and it was likewise done in the later case of Miller v. Commonwealth, 163 Ky. 246, wherein, in disposing of the objection, we said: "It is usual to insert these words in the instruction on wilful murder, though there is no good reason for so doing. If the killing be unlawful, wilful, felonious and with malice aforethought, it could not be in self-defense; the one quality necessarily excludes the other. For this reason it has been held, and is the law in this state, that where an apt and proper instruction on self-defense is given, it is not error to omit the phrase mentioned from the instruction on wilful murder. See Catron v. Commonwealth, 140 Ky. 61, 130 S. W. 951; Hoskins v. Commonwealth, 152 Ky. 805, 154 S. W. 919." It is, therefore, clear that this ground is without merit.

Finding no error prejudicial to the substantial rights of defendant the judgment is affirmed