## Noble v. Commonwealth.

(Decided January 14, 1927.)

## Appeal from Breathitt Circuit Court.

1.  Homicide—Whether Defendant had Right to Shoot Deceased in Self-Defense of Brother Held for Jury.—In prosecution for murder, where defendant injected himself into quarrel and shot deceased from corner of house at time deceased threatened defendant's brothers with pistol, evidence held for jury to right of defendant to shoot in defense of brother, where brothers were not entitled to plea of self-defense, as against deceased.

2.  Homicide—Right of Person, Entering Quarrel, to Commit Homicide in Defense of Brother, Held Dependent on Brother's Right of Self-Defense.—Person who intervened in quarrel between deceased and former's brothers, not knowing who was aggressor, was entitled to plead defense of brother in shooting deceased, only if brothers were at time entitled to shoot in defense of themselves, as right to act in defense of another depends on right of other to defend self.

3.  Homicide—Where Evidence Indicated Wound Inflicted by Defendant Did Not Contribute to Death, Failure to Instruct on Crimes of Shooting and Wounding, Under Statutes, Held Error (Kentucky Statutes, Sections 1166, 1242).—Where evidence, in prosecution for homicide, indicated deceased had been shot before wounds were inflicted by defendant, and that such wounds did not cause death or contribute thereto, failure of court to instruct, under Kentucky Statutes, section 1166, on shooting and wounding another with intent to kill, and section 1242 for shooting and wounding another in sudden heat of passion without malice, held error, where instructions on whole law of case were requested.

A. S. JOHNSON and A. H. PATTON for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant, together with his two brothers, Vard and Billy Noble, were jointly indicted charged with the murder of Alex Noble. They were each charged with doing the shooting which resulted in Alex Noble's death, and the other two charged with being present at the time and aiding and abetting therein, but there was no charge of conspiracy.

Vard and Billy Noble, upon their joint trial, were found guilty of manslaughter and each of them sentenced to imprisonment for a term of ten years. Upon their appeal from such judgment to this court there was an affirmance. (212 Ky. 668.)

Appellant upon his separate trial was likewise found guilty and sentenced to imprisonment for twenty-one years, from which judgment this appeal is prosecuted.

A statement of the essential facts surrounding the homicide will be found in the opinion referred to, and in this opinion it will be necessary only to supplement them to the extent of illustrating the questions raised.

The record discloses the existence of a bad state of feeling between the decedent, Alex Noble, and the family of his kinsman, Alex Noble, the latter of whom is the father of the three defendants. Austin Combs, at whose home the homicide occurred, so far as is disclosed, had no connection with the ill-feeling between the parties, and the members of both of the Noble families visited his home, which was in the same general locality.

Upon the occasion in question Austin Combs had left his home, and taking his shotgun with him, had gone some distance away intending to go to the home of the defendants to secure their services in doing certain things he wanted them to do. When he left home decedent was not at his place, although the evidence shows that he had several times recently theretofore visited there; but during his absence decedent went to his home without notice to him or any one else that he expected so to do. On the road a mile or two away Austin Combs met the three defendants, and they agreed to and did accompany him back to his home, none of the party at the time having knowledge or notice that decedent was there. In the meantime decedent remained there with the family of Austin Combs and was in a drunken condition.

On the return trip the shotgun of Austin Combs was turned over to appellant, Buell Noble, and he had the same when they reached the house. When they reached there Austin first entered the house and passed through the room where decedent and Combs' wife, and possibly others, were, and went into the kitchen, and a short distance behind him came Vard and Billy Noble, and immediately upon their entering into the room where decedent was the shooting between them and him ensued. In the meantime appellant, Buell Noble, remained on the

outside and never did enter the house where decedent was until after the whole difficulty was over, and while he was only a few feet away on the outside, it is not disclosed that he saw or was concerned in the shooting that occurred on the inside. But when decedent, who had in all probability already received his death wound, came out of the house, followed by Vard and Billy Noble, decedent turned a short distance from the door where Vard and Billy Noble were then located, or at least one of them, and presented his pistol immediately at either one or both of them. Appellant at the time was near the corner of the house and still had the shotgun he had carried, and upon the presentation by decedent of his pistol at either one or the other of his brothers he fired the shotgun at decedent and some of the shot from that load, consisting of small No. 6 shot, struck him in and about the chest. There is no material contradiction in the evidence as to the facts above stated, and even the dying declaration admitted in evidence discloses that when "he got out in the yard, jerked his pistol, throwed it back on Vard, and as he done that someone shot him from the corner of the house."

Under this state of the record it is the earnest contention of appellant's counsel that he was entitled to a directed verdict of not guilty, because all of the evidence shows he shot only in defense of his brother. But the availability of such defense depends upon whether when he injected himself into the difficulty his brother would have had a right at the same time to shoot decedent in his own defense. In other words, if one injects himself into a difficulty between others, at a time and under such circumstances as to be ignorant or have no knowledge of the origin of the difficulty between the others, or as to which was aggressor, he acts at his peril, and is entitled to self-defense only if the other in whose defense he acts might at the time and under the circumstances take similar action.

The evidence is without contradiction that appellant at all times during the difficulty and the shooting inside of the house was on the outside, and while he doubtless heard the shooting he did not know when he intervened and became a party to the controversy whether his brother or brothers were at the time entitled to shoot decedent in their self-defense. Accordingly, therefore, when he took the action he did upon decedent's coming outside

and presenting the pistol at his brother he did' so at his peril, and is entitled to acquittal upon the plea of the defense of another only if such other might have, at the time and under the circumstances, taken the same action he took.

A similar question was presented and passed upon in the case of McIntire v. Commonwealth, 191 Ky. 299. In that case defendant heard fighting and a difficulty going on in the pool room of his brother and had information that his brother and father were in a difficulty therein with some other parties. He went to a nearby place and borrowed a pistol and before his entry into the pool room he saw the decedent throw a pool ball at his father, and when he entered decedent had another pool ball in his hand and in the attitude of throwing it at his father. Likewise at the same time he saw his brother and his mother in a scuffle with 'another than the decedent for the possession of a billiard cue, and under these circumstances, believing his father was in imminent danger, he immediately shot the one who was in the act of throwing another billiard ball at him. Under this evidence the court instructed the jury that although defendant had shot and killed deceased, yet if they believed from the evidence that at the time and place accused believed and had reasonable grounds for believing that defendant or his father was then and there in danger of death or the infliction of great bodily harm at the hands of deceased, and that it was necessary, or believed by the accused in the exercise of a reasonable judgment to be necessary, to shoot deceased in order to avert such danger, they should find defendant not guilty. The criticism of appellant's counsel on the appeal was that the right to take the life of one in defense of another is controlled by whether or not the circumstances surrounding the one defended at the time would have rendered the homicide excusable upon his part, and that the accused was justified in killing deceased in defense of his father if at the time and under the circumstances the father would have had the right to kill deceased.

The court in commenting upon this question in that case said:

"This is a correct statement of the law as administered in this jurisdiction where applied to facts such as existed here where there is evidence tending to prove that the person defended was the aggressor

in the fighting and brought on the difficulty and thus would have no right to take the life of his adversary upon a claim of self-defense. Utterback v. Commonwealth, 105 Ky. 723; McIntosh v. Commonwealth, 29 R. 1100; Watkins v. Commonwealth, 123 Ky. 817. Otherwise one might be justified in intervening, where two are participating in a fight and to take the life of one who was not at fault, and when his adversary could not rely upon a claim of self-defense if he should have killed him himself. The instruction here complained of did not limit the right of accused to kill the deceased in the defense of his father to the right which the father had at the time to have killed the deceased in his own necessary defense, but it permitted the acquittal of accused, if he, who was not present up to the time he shot deceased and knew nothing of the cause of the trouble, nor the acts of the participants preceding his advent into it, believed from the circumstances and acts he then saw that his father was in imminent danger at the hands of deceased. Such definition of the rights of the accused being more favorable to him than to which he was entitled, he cannot complain.''

The instruction in this case on self-defense and the defense of another is in all essential respects similar to the instruction in the McIntire case, and the facts being in their general nature very much the same, upon another trial in this case the instruction on that subject will be made to conform to the McIntire opinion.

It having been judicially determined on the appeal of Vard and Billy Noble that the evidence showing them to have been the aggressors in the difficulty with decedent authorized their conviction, and the jury having so found, it seems to necessarily follow that at the time this defendant became a party to the difficulty and shot as he says in defense of his brother, he did so at his peril; and that his brothers having been the aggressors in the difficulty and not having therefore the right to shoot decedent in their self-defense, he had no such right and shot at his peril without a knowledge of what had theretofore occurred within the house.

Other authorities on this subject are: McIntosh v. Commonwealth, 29 R. 1100; Utterback v. Commonwealth, 105 Ky. 723; Rose's Ky. Criminal Law, section 2340; 30 C. J. 79-81 (note).

It results, therefore, that the trial court did not err in overruling the motion for a directed verdict of not guilty.

As already stated the evidence tends strongly to show that decedent had received his death wound within the house from pistol shots either by Vard or Billy Noble or both and that the wounds inflicted by appellant from the shotgun did not contribute to his death. The evidence is not clear as to whether either of appellant's brothers were still trying to further shoot decedent at the time appellant fired, although it is convincing that decedent at the time was attempting to fire upon one of them.

The facts in evidence are somewhat similar to those in the case of Lyons v. Commonwealth, 216 Ky. 202, and it was there held that under a somewhat similar state of case one charged with aiding and abetting when it was doubtful whether he had fired at a time when the difficulty was in progress between his brother and another, he was entitled to an instruction under the provisions of section 1166 of the Kentucky Statutes, creating the felony of shooting at and wounding another with intent to kill, and was also entitled to an instruction under section 1242 for shooting and wounding another in sudden heat and passion without previous malice.

On the trial defendant asked the court to give the whole law of the case, and as the court did not instruct under either of the last named sections we are constrained to hold that this was prejudicial error and the defendant entitled to such instructions.

Because of that error alone the judgment is reversed, with direction to grant appellant a new trial, and for further proceedings consistent herewith.