## Green v. Commonwealth.

(Decided October 7, 1927.)

### Appeal from Warren Circuit Court.

1.  Criminal Law.—Judgment will not be reversed because jury believed one set of witnesses rather than another.

2.  Homicide.—One has right under proper circumstances to defend another just as well as he has right to defend himself.

3.  Criminal Law.—Where murder, manslaughter, and self-defense are correctly defined, and reasonable doubt correctly submitted, these instructions, when read together, are law of case, and self-defense need not be negatived in murder and manslaughter instructions.

4.  Homicide.—In prosecution for murder, instruction on self-defense, while somewhat inaptly drawn, held to sufficiently present to jury defendant's right to defend himself and his father from any danger that was to him either real or apparent, and was not erroneous.

5.  Criminal Law.—In murder prosecution, where four of jurors on their voir dire stated they had an opinion that they had formed from hearsay and newspaper accounts, but that they had not

talked to any witnesses, and defendant challenged these jurors for cause, he could not except to decision overruling challenge, under Criminal Code of Practice, sec. 281.

6. Jury.—Under Criminal Code of Practice, sec. 209, jurors in homicide prosecution, who stated they had opinion that they had formed from hearsay and newspaper accounts, but that they had not talked to any witnesses, were not disqualified.

7. Homicide.—In prosecution for murder, in which defense was that act was done in self-defense, and in which defendant was convicted of manslaughter, guilt or innocence of defendant and extent of his punishment held questions for jury.

8. Criminal Law.—Where jury found defendant guilty of manslaughter, verdict must stand, unless there appears some error in record which probably caused jury to reach an erroneous conclusion.

A. J. OLIVER and RODES K. MYERS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY COMMISSIONER—
Affirming.

On May 7, 1926, Clyde Green shot and killed Joseph Allen. Clyde Green and his father, George Green, were jointly charged by indictment with murder. Separate trials were asked, under section 237 of the Criminal Code. The commonwealth elected to try Clyde Green. He was convicted of manslaughter, and his punishment fixed at confinement in the penitentiary for 21 years.

Allen and the Greens had been friends. Recently a farm which had belonged to George Green and his brother, Will Green, had been sold under order of the court. The purchaser at the judicial sale had conveyed it to the Allen Realty Company, a partnership composed of W. C. Penick and the deceased, Joseph Allen. Allen had taken possession of the farm, and had placed some parties on it. George Green had some things yet in the house and on the farm. On the morning of the killing, George Green had gone to the farm to get a couple of cows. Mrs. Kinsolving, a daughter of the deceased, was there, and refused to allow George Green to take these cows until her father could come out there and see about it. Clyde Green passed the farm about that time, and he and George Green came to town and went to Allen's office. Allen was using the telephone at the time they entered his office, and it appears that in that conversation Allen had learned that George Green had come for

these cows, and that it was reported to him in that telephone conversation that the Greens had said something about him that reflected on his honesty. He hung up the receiver, and in a towering rage turned upon the Greens, accusing them of having said these things, which they denied and sought to explain. Allen was a large man, weighing about 200 pounds. Clyde Green weighed about 128 pounds. George Green had recently recovered from an attack of influenza, had also recently had his shoulder dislocated, and was in a practically helpless condition. The Greens endeavored to make explanations and to avoid difficulty. Allen would listen to nothing, and immediately assaulted Clyde Green, and Clyde ran into an adjoining room. Allen then assaulted the old man, George Green, whereupon his partner, Penick, grabbed Allen's arm and jerked him back. Allen freed himself from Penick, and ran into the adjoining room after Clyde. Clyde endeavored to escape from that room to the hallway, but found the door locked, so Allen repeated his assault upon Clyde, and again Penick pulled him off. Allen then turned on George Green again. The latter ran through the main office, out into the hallway, where Allen caught him and struck him in the face, fracturing his right nasal bone, blacking his eyes, cutting his face at one place, and inflicting a very severe blow just below the ear and just back of the jawbone.

At this point there is some conflict in the evidence. According to the witnesses for the commonwealth, Penick again caught Allen's arm and had hold of him, when Clyde Green came into the hallway and fired the shots which resulted in Allen's death. According to the Greens, George Green was knocked down by the blows inflicted on him by Allen, and Allen was kicking him while he was in that prostrate condition, when Clyde Green, attracted by his father's cries, came into the hall, and, seeing the blood gushing from his father's nose and mouth, called to Allen to stop. Allen did not stop, whereupon Clyde shot him. Allen now turned on to Clyde and said, "Now, God damn you, I am going to kill you," and continued his assault on Clyde, and Clyde continued to shoot until he had shot him five times, whereupon Allen exclaimed, "My God! he has killed me!" He walked into his office, where he died in a few minutes without saying anything else. The Greens testified that at the time of the shooting there was no one in the hallway but them and Allen. The contention of

Clyde Green is that he shot Allen in the defense of his father and himself, and his evidence and that of his father appears to support that contention. The evidence for the commonwealth is that, at the time Clyde Green did this shooting, Penick had caught Allen again, and was holding him, and if the jury believed this it would justify the finding that at that time there was no real or apparent danger to either of the Greens.

We have often written:

"A judgment will not be reversed because the jury believed one set of witnesses rather than another." Easterling v. Com., 216 Ky. 541, 287 S. W. 972; Conners v. Com., 152 Ky. 57, 153 S. W. 16; Cornett v. Com., 156 Ky. 795, 162 S. W. 112; Crews v. Com., 161 Ky. 614, 171 S. W. 188; May v. Com., 164 Ky. 109, 175 S. W. 17; Milburn v. Com., 204 Ky. 692, 265 S. W. 25.

The appellant is complaining of the instructions. The first instruction was an instruction on murder, and the second on manslaughter. In the third, the jury was instructed that, if they believed the defendant guilty, but entertained a doubt as to whether he was guilty of manslaughter or murder, to find him guilty of manslaughter. The fourth instruction was:

"If the jury believe from the evidence that, at the time defendant, Clyde Green, shot and killed Joseph F. Allen, he believed in good faith and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of said Allen, or that George Green was then and there in danger of death or the infliction of some great bodily harm at the hands of said Allen, and there appeared to defendant no other safe or apparently safe means of averting the impending danger, if any there was, to himself or to George Green, real or apparent, then the jury will find the defendant not guilty on the grounds of self-defense or apparent necessity."

As the jury did not find the appellant guilty of murder, we shall not notice the criticism of the first instruction. The criticism of the second instruction is that it does not contain these or similar words, "and not in the necessary or apparently necessary defense of his father, George Green." That a man has a right, under proper circumstances, to defend another, is just as well

settled as is his right to defend himself. Stanley v. Com., 86 Ky. 440, 6 S. W. 155, 9 Ky. Law Rep. 655; Smith v. Com., 9 Ky. Opin. 363; Noble v. Com., 217 Ky. 556, 290 S. W. 330; Lyons v. Com., 216 Ky. 202, 287 S. W. 534; McIntire v. Com., 191 Ky. 299, 230 S. W. 41.

We have often written that: .

> "When murder is correctly defined, manslaughter correctly defined, self-defense correctly defined, and reasonable doubt correctly submitted, these instructions, when read together, are the law of the case, and self-defense need not be negatived in the murder and manslaughter instructions."

See Conley v. Com., 208 Ky. 538, 271 S. W. 566; Hopkins v. Com., 210 Ky. 378, 275 S. W. 881; Lee v. Com., 216 Ky. 698, 288 S. W. 688.

Therefore there was no error in the instructions as a whole.

While instruction 4 is somewhat inaptly drawn, still it presented to the jury Clyde Green's right to defend himself and his father from any danger that was to him either real or apparent.

This killing attracted a great deal of attention; it was given considerable newspaper notoriety; 200 men were summoned for jury service before the jury was impaneled. Most of them were excused, because they had expressed an opinion, and on the jury that tried the case there were four men who on their voir dire stated they had an opinion that they had formed from hearsay and newspaper accounts, but that they had not talked to any witnesses. The defendant challenged these four men for cause. His challenge was overruled, and he excepted, and is now complaining of that. By section 281 of the Criminal Code, such decisions are not subject to exception. Moreover, these men were not disqualified. See section 209 of the Criminal Code.

His final contention is that the verdict is flagrantly against the evidence. We must admit that it does appear to be a very harsh finding and a rather severe sentence; still a man has been killed, and the guilt or innocence and the extent of his punishment were questions for the jury. "When a jury decides a case like this, the verdict of the jury must stand, unless there appears some error in the record which probably caused the jury to reach an erroneous conclusion." Maxey & Warner v. Com., 219 Ky. 745, 294 S. W. 507.

Finding no such error in this record, the judgment must be affirmed. The whole court sitting, except Judge Logan and Judge Sampson.