## Dupoyster, et al. v. Miller, Sr.

(Decided November 10, 1914.)

### Appeal from Ballard Circuit Court.

1.  Maps—Survey or Plat—Duty of Appellant to File With Record.— Where on the trial of a land suit, maps, surveys or plats are used on the trial for the assistance of the court and jury, and to aid witnesses in explaining the situation, they should be made a part of the record on appeal, as they are equally as helpful to this court as to the trial court.

2.  Land—Ejectment—Courses and Distances—Marked Objects—Instructions.—It has been settled in numerous opinions that where there is a conflict between courses and distances and the objects called for in a deed, the objects control and not the courses and distances. Therefore, when in the trial of an ejectment suit there is conflict in the deed between the courses and distances and marked objects, for example, stakes in a road, the court should tell the jury that the marked objects determine the location of the line, although if it should be run by courses and distances it would be located elsewhere.

GUS THOMAS, J. B. WICKLIFFE and W. T. WHITE for appellants.

W. A. ANDERSON and J. E. KANE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This controversy arises out of a dispute as to the ownership of a small tract of land, which is claimed both by the appellants, who were plaintiffs below and who will hereafter be called the plaintiffs, and the appellee, who was defendant below and who will hereafter be called the defendant.

It appears that prior to 1883 the Nortons owned a large body of land in Ballard County through which the Blandville and Wickliffe road ran. In 1883 the Nortons

sold to Hicks and Buckhart, remote vendors of defendant, a part of this land lying on the north side of this road, the road running through the land east and west. The land thus sold was described as follows:

"Beginning at a stake in the division line between lots two and three of the division of the Jacob Myers Treasury warrant survey between the line of Benjamin Logan, deceased, on the north side of the Blandville road with two hickories and sweet gum saplings as pointers; thence N. 89½ W. 38 poles to a stake; thence N. 54 W. 57½ poles to a stake; thence S. 84½ W. 90 poles to a stake in the Blandville and Wickliffe road at the east end of William Tacket lane; thence N. 178 poles to a stake with pointers; thence E. 179 poles to a stake in the line of lots two and three aforesaid; thence S. 201 poles to the beginning."

In 1889 the Nortons sold to B. S. Dupoyster, the vendor of the plaintiffs, a part of this land on the south side of the Blandville and Wickliffe road, the deed bounding the land as follows:

"Beginning at a stake as pointer on the north side of the Wickliffe and Blandville road in the line dividing lots two and three this being the southeast corner of a tract of land sold to Hicks and Buckhart by G. W. and W. F. Norton; thence with their line with the said road N. 89½ W. 38 poles to a stake; thence N. 54 W. 57½ poles to a stake; thence S. 84½ W. 90 poles to a stake in the road in the east line of W. A. Jones; thence S. 65 poles, or to the southeast corner of the said Jones tract; thence west with Jones' line about 48 poles to the dividing line between lots numbers one and two of the Myers' division; thence south with lots one and two to the south boundary line; * * * thence to the beginning."

The plaintiffs brought this suit against the defendant to have their title established to about two acres of land on the south side of the road, that they alleged the defendant was claiming and in the possession of, and also sought to recover damages for the alleged wrongful detention of this land.

The defendant put in issue the plaintiff's title and asserted that he was the owner of this land, and sought damages for its alleged wrongful detention by the plaintiffs.

On a trial before a jury there was a verdict and judgment in favor of the defendant, and the plaintiffs appeal.

It will be observed that both the plaintiffs and the defendant claim title from a common source, the Nortons, and that the beginning corner in the Dupoyster deed calls for a stake on the north side of the Wickliffe and Blandville road, being the southeast corner of the land sold to Hicks and Buckhart, and runs thence with the line of Hicks and Buckhart with the road N. 89½ W. 38 poles, N. 54 W. 57½ poles, S. 84½ W. 90 poles to a stake in the Blandville and Wickliffe road. It thus seems to appear that it was intended to convey to Hicks and Buckhart the land on the north side of this road and to Dupoyster the land on the south side of the road, the road being, in a general way, the division line between the two tracts of land, the Hicks and Buckhart land being on the north and the Dupoyster land on the south of the road.

The evidence for the plaintiffs tends to show that soon after the purchase from the Nortons, Dupoyster, treating the road as the boundary line of his land, built a fence on the south side of the road, and has been in possession of the land continuously since that time.

Some time after this the land purchased by Hicks and Buckhart was divided and the defendant became the owner of part of this land, and in January, 1904, obtained a deed. This deed describes the land conveyed to him as being "Lot No. 2 in the division of the land of John Buckhart and S. A. Hicks, * * * beginning at a stake on the Blandville and Wickliffe road on the north side of said road; thence N. 54 W. 71½ poles to a stake; thence S. 84½ W. 90 poles to a stake in the east line of William Tacket's land; thence north 178 poles to a stake in the field; thence east 88 poles to a stake; thence south 188 poles to the beginning."

If there was in the record a survey or plat of this land in dispute, it would assist us very much in the consideration of this case. It appears that on the trial the court and jury had the benefit of a map or plat, but it was not made a part of the record, although we have more than once called the attention of attorneys to the fact that maps and plats used on the trial of cases for the assistance of the trial court and jury would be equally as helpful to this court and should always be brought here with the record.

Stating this controversy in simple form, the plaintiffs contend that the Blandville and Wickliffe road is the

dividing line between their land and the land of the defendant, while the defendant claims that the courses and distances in his deed control, and that according to these courses and distances his line runs part of the way, and at the point in controversy on the south side of the road, and on that side of the road claimed by the plaintiffs. If the courses and distances are to have controlling effect, the contention of the defendant is correct, but if the road is to be treated as the line, then the plaintiffs should succeed.

The rights of the defendant are to be determined by the courses and distances and objects called for in the deed made by the Nortons to Hicks and Buckhart in 1883, and so indeed are the rights of the plaintiffs to be determined by this deed, because the deed subsequently made to their vendor by the Nortons contains the same courses and distances and calls along the line in controversy as the deed made by the Nortons to Hicks and Buckhart.

It will be observed that this road is a prominent feature in the deed from the Nortons to Hicks and Buckhart. For example, their deed specifies that the line along this road begins "at a stake on the north side of the Blandville road; thence 89½ W. 38 poles to a stake; thence N. 54 W. 57½ poles to a stake; thence S. 84½ W. 90 poles to a stake in the Blandville and Wickliffe road." And the deed to Dupoyster also specifies that it begins "at a stake on the north side of the Blandville road, being the southeast corner of the land sold by the Nortons to Hicks and Buckhart; thence with their line to the said road N. 89½ W. 38 poles to a stake; thence N. 54 W. 57½ poles to a stake; thence N. 84½ W. 90 poles to a stake in the road."

It is, therefore, as we think, very plain that this road was intended by the Nortons, as well as by Hicks and Buckhart and Dupoyster, to be the division line between the land sold to Hicks and Buckhart and the land sold to Dupoyster.

The trial court, however, in the instructions given to the jury, virtually ignored this road as a line and told the jury, in substance, that the rights of the parties were to be determined by the courses and distances in the deeds, when, as we think, their attention should have been directed to the objects specified in the deed, as, for example, to the stakes in the road. It has been settled in numerous opinions that where there is a conflict between

the courses and distances in a deed and the objects called for in the deed, the objects control and not the courses and distances. In this case there is no dispute about the fact that the deeds of both parties call for stakes in the road, and the road having been thus indicated as a monument in the line, should have controlling influence on the courses and distances.

This being the situation, the court should have told the jury, in substance, that if they believed from the evidence that the road was in substantially the same location as it was when these deeds were made, the stakes in the road determined the location of the lines of the parties, although the lines if run by courses and distances would be located elsewhere.

The instructions on the subject of adverse possession and champerty are also erroneous. The weight of the evidence tends to show that the plaintiffs did have this piece of land in controversy, which is situated on the south side of the road, enclosed by a fence continuously for more than fifteen years before the commencement of this action, holding it and claiming it adversely as a part of their land, all of which was situated on that side of the road; although there is some evidence that this land in controversy had not been enclosed with a fence for that period of time. But the court on these subjects instructed the jury in substance that before the plaintiff could rely on adverse possession or the champerty statute he, or those from whom he derived title, must have had this strip of land in controversy enclosed for as much as fifteen years prior to the suit.

If, in fact, the plaintiff owned the land on the south side of the road up to the road, and the road was his line, and he was in the actual possession of any part of this land, his actual possession carried him to the full extent of the exterior boundary lines of the land. Stating it in another way, if the plaintiff and those under whom he claimed title had, for more than fifteen years next before the institution of the suit, been in the actual possession of the land on the south side of the road, including the land in controversy, no matter whether this particular land in controversy was enclosed by a fence or not, his title and possession carried him to the road, if in fact the road was the line.

Really there is not much place in this case for an instruction on the subject of adverse possession or champerty, because it seems very plain to us that the road, if

it is located now substantially where it was when these deeds were made, is the line between these parties. But if an instruction on the subject of adverse possession and champerty is to be given, the jury should be instructed as we have indicated.

Wherefore, the judgment is reversed, with directions for a new trial consistent with this opinion.