## Conley v. Commonwealth.

(Decided April 24, 1925.)

## Appeal from Floyd Circuit Court.

1. Criminal Law—Instructions on Murder and Manslaughtter Need Not Contain Reference to Definition of Self-Defense in Another Instruction.—In prosecution for murder, failure to add to instructions defining murder and manslaughter and containing clause negativing self-defense, reference to definition of self-defense in another instruction held not error, all the instructions, when read together, being the law of the case.

2. Homicide—Manslaughter Conviction Sustained.—In prosecution for shooting in quarrel over dog, conviction for manslaughter held not flagrantly against evidence.

3. Criminal Law—Alleged Misconduct of Prosecuting Attorney Not Considered, where Not in Bill of Exceptions.—Alleged misconduct of prosecuting attorney cannot be considered, where not made part of bill of exceptions.

4. Criminal Law—Judgment Presumed Supported by Omitted Parts of Partial Record.—Where appeal was prosecuted on partial record only, judgment would be presumed supported by omitted parts, either of themselves or by explanation afforded by other evidence.

5. Criminal Law—Plat should Not be Allowed Until Filed as Part of Record.—Introduction of plat by either party should be refused until filed, when it becomes part of record, and neither party can thereafter withdraw it.

6. Criminal Law—Plat should Accompany Record.—Where plat has been introduced in trial of case, and either party appeals from judgment, plat, or a copy of it, should be sent with record.

A. J. KIRK and B. M. JAMES for appellant.

FRANK E. DAUGHERTY, Attorney General, and JOHN P. CUSICK for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Coet Conley, indicted for murder, was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for fifteen years. On March 28, 1923, Coet Conley killed his uncle, Fred Conley, under these circumstances: Coet Conley and his uncle lived about 400 yards from each other on Salt Lick creek in Knott county, Kentucky. The deceased was the son of Epperson Conley and appellant is the son of Morg Con-

ley, a brother of Epperson Conley, thus on account of the relationship of their fathers the appellant and deceased were first cousins, but the appellant's mother was a half-sister of Fred Conley, thus through appellant's mother, the deceased was his uncle.

A county highway passes up Salt Lick creek in front of the homes of deceased and appellant. Morg Conley is a blacksmith and near his home he has a blacksmith shop. Epperson Conley conducted a store on the opposite side of the creek, not far below this shop. On the day Fred Conley was killed, he and his father and a man named Mitchell Thomas, were at this store. A post office is conducted in the store, and the deceased was the postmaster. Shortly before the killing, the appellant was at work in the blacksmith shop with his father and it happened that his mother was there also. The deceased was a dog fancier, and he and his father and brother, Jack Conley owned five or six dogs. Appellant owned a dog, and on the day of the killing the appellant's pup strayed off down the road toward the store where he was attacked by a number of dogs belonging to deceased and his father. Appellant's dog being outnumbered, ran back up the road toward the blacksmith shop. Hearing the commotion, appellant went out into the highway and fired two shots into the ground to scare off the pursuing dogs. When he did this, the dogs turned back toward the store. When deceased heard the shots and saw the dogs come back down the road, he immediately started to the blacksmith shop. His father left the store and went to his home. Mitchell Thomas left the store and went to Epperson Conley's barn. When the deceased reached the blacksmith shop where appellant and his father were at work, according to appellant, he asked who had shot at his dogs. Appellant in a friendly way told him that he had fired two shots to scare the dogs off. Thereupon deceased became very angry and began to curse and abuse appellant and to call him all sorts of vile, mean and insulting names. Appellant insisted that he didn't shoot the dogs and only shot into the ground to scare them. That didn't reconcile the deceased, and he insisted that he was going to whip appellant, and said that he would kill his own father or his brother, if they shot his dogs. Again appellant told him he didn't shoot or shoot at his dogs, that he only shot in the ground to scare them. At this juncture, one Willer Conley came along

and called for an instrument which the appellant had been making for him, and which was to be used in preparing some crossties. Appellant finished this instrument and carried it out into the road and gave it to young Conley, who was on his horse and who immediately rode away. While the appellant was engaged in finishing and delivering this instrument to Willer Conley, his father, Morg Conley, had sought by talking to the deceased, to assuage his wrath, but apparently without success, for when appellant returned to the shop, deceased renewed his abuse and cursing. As the abuse and cursing continued, his wrath increased, and appellant said to him: "Fred, talk right about it. I don't want to have any trouble." The deceased replied: "I will talk as I G— d— please, and will do as I G— d— get ready, and if you have got anything to do, by — go to it." Then he made a grab to get his pistol and sprang toward appellant and said: "If you have got any way to help yourself, by —, go to it." Appellant drew his pistol and began firing. Fred Conley was instantly killed. One shot struck him in the back, just below the right shoulder blade and came out near the left nipple; another shot passed through his right arm, entered his body in the right axillary space and came out somewhere near his left collar bone. Another shot struck him in the head near the right ear and came out near the left temple. There was a glancing shot in the chest that made only a flesh wound.

It was shown by the evidence that the deceased was overbearing and reputed to be a dangerous man. Appellant was at his place of business when the deceased came there and sought the difficulty with him. The appellant's account of this is supported by his father and mother, and thus it appears from that evidence that he acted in his necessary self-defense. He accounts for these shots in the back of deceased by saying that when he began shooting the smoke so obscured his vision that he could not tell just where he was shooting, and that the deceased probably turned as the shooting went on, and in that he is supported by the other witnesses. However, Ray Conley, son of deceased, says that his father had started back home when appellant shot him and that his back was to the appellant when the shots were fired. He is supported by the evidence of Mitchell Thomas. Fred Conley's pistol was never drawn.

Whether this shooting occurred while the deceased was persisting in his attack upon appellant or after the deceased had started home was a question for the jury. In his motion and grounds for new trial appellant alleges that the court erred in admitting incompetent evidence offered by the Commonwealth and in refusing competent evidence offered by him, but evidently attached very little importance to these errors and also to the error assigned in ground seven, as he has not discussed them in his brief.

He complains of the instructions in his third ground for new trial, and insists that after the words, "not in his necessary or reasonably apparent necessary self-defense" the court should have added "as self-defense is defined in instruction number 5," but we cannot agree with him. This court has held this to be unnecessary, and when murder is correctly defined, manslaughter correctly defined, self-defense correctly defined, and reasonable doubt correctly submitted, these instructions, when read together, are the law of the case, and self-defense need not even be negatived in the murder and manslaughter instructions. See Catron v. Com., 140 Ky. 61, 130 S. W. 951; Hoskins v. Com., 152 Ky. 805, 154 S. W. 919; Miller v. Com., 163 Ky. 246, 173 S. W. 761; Holcomb v. Com., 207 Ky. 367, 269 S. W. 349.

We are not convinced that the verdict of the jury was flagrantly against the evidence, though it does appear to have been against the numerical weight of the evidence, and that disposes of the fourth and fifth grounds for new trial. The error complained of in his sixth ground for new trial, which is alleged misconduct of the attorney representing the Commonwealth, we cannot consider, as the alleged misconduct is not made a part of the bill of exceptions. Vanover v. Com., 203 Ky. 362, 262 S. W. 282.

When this case was tried, there was used in the court a plat of the premises made by a surveyor, and in their evidence the witnesses referred to this plat. It was made from a survey of the premises and undertook to locate the positions of the various witnesses and the obstructions that it was claimed shut off their view of the killing. This plat is not in the record here. The rule is well settled that when an appeal is prosecuted on only a partial record it may be presumed that the judgment is supported by such omitted parts, either of them-

selves or by the explanation they afforded of the other evidence. Clark v. Burchett, 204 Ky. 153, 263 S. W. 746; Bridgewater v. Cont. Fire Ins. Co., 187 Ky. 43, 218 S. W. 292. When upon the trial of a case, either party offers to introduce a plat, the court should refuse to allow. the plat to be used until it is filed. When it is filed, it becomes a part of the record, and neither party has thereafter the right to withdraw it. If either party desires to appeal from the judgment, this plat or a copy of it should be sent with the record. See rule XXII.

The judgment is affirmed.