# O'Neil & Hearne v. Bray's Adm'x.

(Decided Jan. 28, 1936.)

TYE, SILER, GILLIS & SILER for appellants.

L. O. SILER and R. S. ROSE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

When a bus was wrecked on a curve at the foot of a long steep hill just north of Williamsburg on May 15, 1934, and the passengers were injured, two fatally, a crowd gathered, and automobiles lined up on both sides of the hill for some distance back. Johnny Bray and Charlie Hood were sitting in Hood's car parked on the west side of the road, headed down hill. The road was of loose rock and oil, and was quite slippery because of the rain. An ambulance belonging to the appellants had been called to the scene from Corbin. It skidded, turned almost end for end, and struck the rear of the parked automobile, knocking it 15 or 20 feet, but did not turn it over. While it appeared at the time that Bray was not injured, or, if so, only slightly, it subsequently developed that he had been hurt. About two months later, Bray was killed by unknown persons in a tourist camp. His wife as administratrix brought this suit against the appellants, claiming damages for his personal injuries, expenses of medical treatment and lost time. A judgment for $2,000 was recovered.

The negligence specifically alleged was that the defendants' employee drove the ambulance "at an exceedingly high and dangerous rate of speed of more than 50 miles an hour." Plaintiff's evidence was that the ambulance was running 40 or 45 miles an hour at the top of the hill, 150 or 200 feet away, but slowed down before reaching the Hood car, which was wholly off the traveled way. The driver stated he had come almost to a stop at the top of the hill because of a wreck up there. As he turned the curve, he saw the parked automobiles on both sides of the road, and was running 25 or 30 miles an hour at the point of collision. He testified the Hood car was double-parked and was on the hard surface, but there was room to pass. Another automobile coming up the hill required him to apply his brakes, which caused the skidding. One who was directing traffic on the hill told Hood a few moments before the accident to move his car and clear the right of way as the ambulance was coming. He and other witnesses say the car was off the traveled part of the road, and that the speed of the ambulance was 15 to 20 miles an hour. All agree that the road was very slick.

The appellants submit that the statute which fixes the reasonable speed limits is not applicable to ambulances; hence that no prima facie negligence was proven by the evidence that their ambulance was running over 40 miles an hour. This argument is premised upon paragraph (9) of section 2739g-51, which excludes from the provisions as to speed "vehicles owned and operated by the fire, police or hospital departments of any municipality." Since neither of the municipalities of Williamsburg or Corbin had hospital ambulances, it is argued, as a logical interpretation of the statute, that the exemptions should be extended to private ambulances engaged in the same service of answering emergency calls. Reliance is had upon Vandell v. Sanders, 85 N. H. 143, 155 A. 193, 80 A. L. R. 550, where it was held that a city fireman answering a call in his private automobile came within the spirit of a law exempting municipal fire apparatus from the ordinary speed regulations. The court was of opinion that the same legislative purpose to facilitate the early arrival of firemen at the scene of a fire which found expression in the requirement that such apparatus be given the right of way was apparent, and that the exemption should

be construed in such a way as to further the purposes and policies of the act. The facts of the cases are different. There the fireman was engaged in performing his duty within the city, and in doing so was using his own automobile in the service of the municipality, and therefore, came within the specific exemption. This ambulance was not being used for or within the municipality. We are not authorized to read into the statute something that is not there. Huddy, Automobile Law, vol. 3, 4, p. 319. It does provide such a car has the right of way, section 2739g-38, but only when it is being operated "with due regard for the safety of the public."

The argument is that the very use of an ambulance, as in the present instance of hastening to the relief of the fatally injured passengers, demands the greatest possible speed, and justifies the recognition of a right to exceed the speed limits. Perhaps so. But there can be no justification of negligent driving or of any act imperiling the life and limb of others on the way. The exemption of municipal machines cannot be said to have that effect. Huddy, vol. 3, 4, p. 320. The statute regulating speed in addition to being punitive is a rule of evidence, and is, in effect, a declaration of the weight which the courts shall give to the evidence. Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478; Huddy, Automobile Law, vol. 3, 4, p. 324. It simply declares that speed in excess of the rates stipulated shall be regarded prima facie evidence of negligence. As has been previously stated, one may drive faster and not be negligent or may drive slower and be negligent. It is the circumstances that control the matter of reasonableness of speed in measuring the question of ordinary care. Utilities Appliance Co. v. Toon's Adm'r, supra; Diamond Taxicab Co. v. McDaniel, 258 Ky. 478, 80 S. W. (2d) 562; Hunt v. Whitlock's Adm'r, 259 Ky. 286, 82 S. W. (2d) 364. Even though the speed of the machine was less than 40 miles an hour just at the time of the collision, it was for the jury to say whether, under the circumstances, considering the condition of the road, the density of traffic, and the many parked cars on both sides, the speed was reasonable. The speed of 40 miles an hour is recognized as reasonable only "on a straightaway, unobstructed highway." Section 2739g-51, par. (3) Kentucky Statutes.

It may be said, quite pertinently, that such evidence is to be regarded as is that of the skidding of the ambulance. The mere fact that an automobile skids on a slippery road does not of itself prove negligence so as to render the res ipsa loquitur doctrine applicable. Berry, Automobile Law, sec. 156; Huddy, Automobile Law, vol. 3, 4, p. 121; Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665; Tente v. Jaglowicz, 241 Ky. 720, 44 S. W. (2d) 845; Hunt v. Whitlock's Adm'r, supra. But skidding is a circumstance to be considered on a general issue of negligence, or, as in this case, upon the specific allegation of negligence through operation at an unreasonable speed, for skidding which is the result of excessive speed may justify a finding of negligence. Rockwell v. Standard Stamping Co., 210 Mo. App. 168, 241 S. W. 979; Huddy Automobile Law, vol. 3, 4, p. 123.

There was an issue raised by the conflicting evidence as to whether or not, under the conditions of the road and traffic, the speed of the ambulance constituted negligence and was the proximate cause of what happened.

In the matter of the claim that Bray was contributorily negligent in choosing to remain in the parked car after the warning that it should be moved as the ambulance was coming, it must not be overlooked that, according to the plaintiff's evidence, the car was off the traveled right of way, and all admit that there was room for the ambulance to pass in safety. It cannot be said as a matter of law that Bray must have anticipated that the automobile would come down the road, either negligently driven or otherwise, and skid into that car because of the necessity of applying the brakes upon meeting an approaching machine.

The evidence of other cars skidding on the hill was competent, not to show any negligence on the part of defendants' driver, but for the limited purpose of showing the dangerous character of the roadway at the time, which was a proper subject of inquiry and an important circumstance. It may be observed, however, that such evidence is of no probative value without proof that the conditions and management of other cars were the same. Lally v. Cochran, 231 Ky. 211, 21 S. W. (2d) 272; Huddy, Automobile Law, vol. 15, 16, p. 383.

Although the omission could not be said to have been so prejudicially erroneous as to require a reversal of the judgment, we think the court should have permitted the introduction of evidence for what it was worth that about 10 minutes after the accident, while on the way to a doctor's office, Bray said he was not hurt. This comes within the rule admitting statements against interest; the administratrix being in privity with her decedent. Louisville & N. R. Co. v. Rowland's Adm'r, 215 Ky. 663, 286 S. W. 929; Reed v. Philpot's Adm'r, 235 Ky. 429, 31 S. W. (2d) 709.

During the trial, the defendant called the presiding judge to be a witness, but he declined to testify. It appears in the record that he had traveled over the road a short time before the accident and his machine had also skidded. Section 603 of the Civil Code of Practice provides:

"The judge or a juror may be called as a witness; but, in such a case, it is in the discretion of the court to suspend the trial and order it to take place before another judge or jury."

There is nothing to show the defendant did not know when the case went to trial that the judge would be called as a witness. That purpose should have been made known to him that there might be no advantage taken or embarrassment had. His testimony would have been cumulative. Under such circumstances we think the judge exercised a proper discretion in declining to testify. Cf. Burchell v. Tarter, Judge, 242 Ky. 612, 47 S. W. (2d) 75.

The instruction as to the duties and liabilities for their breach embodied the common law and the several statutory provisions, including the advice that the defendant's driver should have operated the car at "a reasonable rate of speed, not exceeding 40 miles an hour." The petition alleged, as the basis of the cause of action, special negligence of excessive speed in violation of the statute. There should not have been a submission of the question whether the defendant was negligent in particulars in which no negligence was alleged. American Sav. Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Suter's Adm'r v. Kentucky Power & Light Co., 256 Ky. 356, 76 S. W. (2d) 29. The form of the instruction, which was in effect that it was

negligence per se to drive 40 miles an hour, has been held erroneous in several cases. Utilities Appliance Co. v. Toon's Adm'r, supra; Diamond Taxicab Co. v. McDaniel, supra. Moreover, a speed limit of 40 miles an hour is prima facie reasonable only "on a straight-away, unobstructed highway" outside a city. Section 2739g-51, Kentucky Statutes.

The instruction on the measure of damages is criticized, first, because it authorized recovery for the permanent impairment of the injured man's power to earn money; and, second, in omitting to provide the qualification that allowance for such damages should be from the time when an award for time lost from labor ended. The argument on the first proposition is that, since Bray lost his life only seven weeks later from a cause in no way connected with the injuries sustained in the accident, there was only a temporary impairment of his power to earn money; hence the measure is inapplicable. While "permanent" connotes a substantial period of time when used in contradistinction of "temporary," in this relation it imports injuries which will incapacitate until death whenever and however it may occur. The measurement is that which is uniformly recognized for permanent injuries, and the early death of the injured person can make no difference in the standard, although, perhaps, the peculiar circumstances might be taken into consideration by the jury in applying it to the facts. The second proposition is conceded error, but the appellee relies upon a failure of the plaintiff to ask for such instruction. Upon another trial the court will include the provision suggested.

For the error in the instruction on the duties of the defendant, the judgment is reversed.