## Risen v. Consolidated Coach Corporation et al.

(Decided June 24, 1938.)

O. B. BERTRAM for appellant.

R. W. KEENON and HURT & HURT for appellees.

LAURENCE B. FINN for appellee Southern Continental Telephone Co.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, L. F. Risen, is a farmer residing in Adair County, Kentucky. The appellee and one of the defendants, Consolidated Coach Corporation, is an incorporated company, and at the times here involved it was a common carrier of passengers by means of busses operated on the public highways of this commonwealth, with proper permission. It will be hereinafter referred to as the ''bus company.'' The appellee, and a defendant below, Southern Continental Telephone Company, is likewise a corporation and at the times here involved it operated a telephone system throughout some counties in the southern part of the commonwealth, embracing Green, Adair, Taylor, Marion and, perhaps, others. It will hereinafter be referred to as the ''telephone company.''

On January 24, 1936, plaintiff was a passenger in one of the busses of the bus company destined from

Lebanon, Kentucky, to Columbia, Kentucky. The bus in which he was traveling ran over the state highway between those two points, along which the road crossed Muldraugh's Hill, a very high ridge approaching the dimensions of a mountain in some places. It was traveling south on that highway. The north side of Muldraugh's Hill that the road climbed before getting to the top of it was about a mile long and quite steep in some places. Somewhere near the foot of the hill on its north side an automobile owned by the telephone company, traveling north and coming down that side of the hill, collided with the bus in which plaintiff was traveling—striking it near its left side where plaintiff was sitting—and the impact knocked the bus almost if not completely into a ditch along its right side of the road. As a result of the impact plaintiff received bodily injuries, to recover damages for which he filed this action in the Adair circuit court against both defendants, seeking judgment against each of them for $2,900.

The negligence as a basis for plaintiff's right of recovery, as averred in the petition, was: "That said bus and automobile when being so operated as heretofore set out, met at or near the foot of Big Muldraughs Hill, in Marion County, Kentucky, and at said time and place, said bus and said automobile collided with each other; that said collision· of said bus and said automobile was brought about or caused by the gross and wanton negligence and carelessness of said servants, agents, employees, chauffeurs of the defendants, who were in charge of said bus and said automobile at the time and place of said accident and collision."

The answers of the two defendants put in issue the averments of the petition, and each of them averred that if the accident was caused by anyone's negligence it was that of the other one. Each of them also averred contributory negligence on the part of plaintiff. Following pleadings, demurrers and motions formed the issues, and at the close of plaintiff's testimony (he having introduced a servant of the telephone company who was in its colliding automobile at the time) the court sustained the motions of both defendants for a directed verdict in their favor, and which was accordingly returned by the jury, followed by a judgment dismissing the petition as against both defendants. To reverse it plaintiff prosecutes this appeal, complaining, of course,

of the alleged error of the court in sustaining the motions referred to.

There was a map made of the road and the mountainside, which revealed locations by a witness who said he was a surveyor and it was used at the trial and about which the witnesses were interrogated, and it was introduced and made a part of the record at the trial; but it has not been brought here with the record, and which is in direct violation of subdivision 11 of Rule III of this Court. We have had occasion in many prior cases brought to this court to warn and admonish attorneys of the necessity of complying with that rule. Such warnings have been so repeatedly given and followed, with no diminishment of non-observance of the rule that we intimated in the case of Conley v. Commonwealth, 208 Ky. 538, 271 S. W. 566, that unless the map used at the trial was made a part of the record and brought to this court the appeal would be disposed of under the universal rule of appellate practice to the effect that, unless all of the evidence heard at the trial was brought to this court duly certified, it will be presumed that the omitted evidence justified the ruling of the court complained of. The rule as enunciated by this court prescribes that its non-observance "will be visited with such penalty in each case as the Court may deem proper." Sharp attention is called to a non-observance of the rule in the cases of Burchett v. Leslie, 186 Ky. 361, 216 S. W. 850, and Lewis v. Commonwealth, 224 Ky. 502, 6 S. W. (2d) 502, and cases prior to them, three of which are Hays v. Ison, 72 S. W. 733, 24 Ky. Law Rep. 1947, Phœnix Jellico Coal Company v. Lemp, Ky., 121 S. W. 418 (not elsewhere reported), and Dupoyster v. Miller, 160 Ky. 780, 170 S. W. 182. Especially should the penalty be an affirmance of the judgment under the rule of practice supra—where the record as brought here is confused as to locations of material and relevant places, which the map would make clear and intelligible so as to enable us to accurately grasp the facts as they were made to appear before the jury who sat in the case, and before the judge who presided at the trial. However, since we are able to glean from the instant record enough to sustain the conclusion that the court did not err in directing a verdict for defendants, and that the judgment should be affirmed, we will refrain from inflicting the penalty above referred to for the violation of the involved rule.

At the time of the collision the bus was on its right side of the road with its right wheels on the extreme outer edge of the berm adjacent to the surfaced driveway, and it was almost stopped. Before it arrived at that spot its driver discovered the automobile of the telephone company approaching from the opposite direction as it came down the side of the hill, which was about the time it (the automobile) turned a slight curve. Travel over the road had made along its center slight indentations in the ice covering the surface of the road in the form of ruts, but they were very shallow. The automobile when first seen by the driver of the bus was from 500 to possibly 750 feet or perhaps 1000 feet ahead of it, and as the automobile was rounding the curve. At the same time the driver of the automobile also saw the bus approaching from the opposite direction. He was then traveling at a rate of speed less than 20 miles per hour. He attempted to change his position in the highway in order to get upon his right side of the road, but the hind wheels of his automobile instead of following the front ones in getting out of the slight rut, made in the ice, refused to do so and started the car to both slipping and winding down the road until it reached the foot of the hill, or the point where the bus had practically stopped, when the back end of the winding car—the speed of which had rapidly increased by the uncontrollable descension down the hill—struck the bus on the side where plaintiff was sitting, as a result of which he sustained the injuries for which he seeks the recovery of damages in this action.

The evidence indisputably establishes the facts and portrays the case as we have stated it. Clearly, under that state of facts the bus company cannot be properly charged with any negligence whatever. There is an intimation in brief that the bus should have stopped still when it saw the crazy antics of the approaching and uncontrollable automobile down the hillside; but whether its stopping at any point in the road after it discovered the automobile would have had any tendency whatever to have prevented the accident is nowhere attempted to be shown nor could it have been done, since if it had stopped elsewhere than at the point of the collision the automobile may have been so adjusted to the road when it reached the bus as to have escaped striking it entirely. The driver of the bus was placed in a more or less emergency where no specific action would suggest itself

to a reasonable man, as the safest course, and for which reason the court clearly did not err in directing the verdict in favor of defendant Consolidated Coach Corporation.

But it is insisted that the peremptory instruction in favor of the telephone company was error, and that its negligence, or rather the driver's negligence, in the operation of his automobile should have been submitted to the jury under the facts as outlined. That argument is based mainly on the conclusion that plaintiff in his testimony stated that the automobile was approaching down the hill at a speed of 35 or 40 miles per hour over the ice covered road, and that it was a question of fact, determinable by the jury, whether running at that speed over a road so conditioned was or not negligence. Perhaps under the authorities hereinafter cited that contention would receive our approval, provided and if there was proof that the automobile of the telephone company was traveling at 35 or 40 miles per hour under the conditions of the slippery surface of the road just immediately before it started upon its crazy career. But plaintiff testified to no such facts. In giving his testimony as to how and under what circumstances the accident happened, he stated that he was reading a paper and became tired and laid it down and looked out of the window and saw the automobile descending the hill towards the bus in its winding and uncontrollable condition, and that it "Looked like (it was coming) about 35 or 40 miles per hour. I saw it was so close all I had time to do was grab the seat in front. After I did that they ran together." Later in his testimony he was asked this question: "How close, in your judgment, were the two cars together when you looked and saw the car coming? A. It could not have been over 50 or 75 feet. I had time to grab the seat in front of me."

That testimony stands undisputed in the record, and it is likewise undisputed that the uncontrollable condition of the descending car had its beginning and commencement several hundred feet beyond the point where it was when plaintiff first saw it. Likewise does the testimony prove, without contradiction, that its speed down the hill after its skidding commenced was continuously increased until the bus was struck. But plaintiff's testimony, even if it had related to the speed of the automobile at the time when the uncontrolled

skidding began, was incompetent to establish the correct speed at which the car was then traveling for reasons given in the case of Bowling Green-Hopkinsville Bus Company v. Edwards, 248 Ky. 684, 59 S. W. (2d) 584. Almost the identical question was presented in that case with only the immaterial difference of the injury being inflicted in that case by a flying rock instead of a sliding automobile. The plaintiff in that case (Miss Edwards) saw the approaching motor vehicle which she contended threw the rock that struck her in the eye—and which if negligently done was because of the excessive speed of that vehicle—and she testified ''that the bus was going 'extremely fast,' from 45 to 50 miles an hour.'' All of the other testimony, except that given by the plaintiff, was to the effect that the speed was all the way from 15 to 35 miles per hour—the great preponderance of the testimony showing that it was between 20 and 25 miles per hour. In rejecting plaintiff's testimony upon the issue of speed, as so given by her under the conditions to which she testified—chief among which was that she had only a frontal view of the approaching guilty vehicle—we said in that case (page 587):

''The full recitation of her evidence we believe demonstrates that her testimony as to the speed of the cars was but a hazardous guess, for under the circumstances she could not have possibly known anything about it. The evidence was insufficient to take the case to the jury upon that point, which was essential to the maintenance of the cause of action.''

It is, therefore, clear that the rate of speed to which plaintiff in this case testified that the guilty car was traveling when he first saw it—under the same circumstances that Miss Edwards saw the alleged guilty vehicle in her case—is not sufficient to contradict the testimony of the introduced traveler in the telephone company car when he said that it was traveling at the time it commenced skidding at a rate ''less than 20 miles per hour.''

The very late case of Gilreath v. Blue & Gray Transportation Company, 269 Ky. 787, 108 S. W. (2d) 1002, was the last presentation to us of the question of the duty of drivers of automobiles over ice covered roads. The body of the opinion supports the syllabi, and we insert syllabus No. 2, saying:

"When traveling over a slippery road, the operator of an automobile must take into consideration the condition of the road, but, if an accident happens and the evidence shows that it resulted from the condition of the road and not from any negligence on the part of operator, no liability results."

In the opinion, in substantiation thereof, we said (page 1004): "It is a matter of common knowledge that an automobile may skid on a slippery road without negligence in its operation. O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S. W. (2d) 353; Hunt v. Whitlock's Adm'r, 259 Ky. 286, 82 S. W. (2d) 364; Tente v. Jaglowicz, 241 Ky. 720, 44 S. W. (2d) 845, 848." We then quoted from the Jaglowicz Case, in which we said inter alia: "But it cannot be held as a matter of law that the operator of a car is necessarily negligent when it skids or slides on an icy street. The proper inferences from that fact are to be drawn by the jury."

In 113 A. L. R. on page 1002, is an extensive annotation on the subject of "Liability for damage or injury by skidding motor vehicles." It will be found by reading it that the courts generally hold that accidents —produced exclusively by skidding on an ice covered surface of a road, and which are not contributed to by non-observance of some other precautionary requirement—will not support a cause of action based on negligence. In other words, that traveling upon a road so conditioned is not per se negligence. In this case the automobile of the telephone company was indisputably traveling at what any reasonable person would regard as a safe rate of speed when it commenced to skid. There is no testimony whatever that the driver failed to do anything required of him to prevent the collision after the skidding began. It therefore necessarily follows that the peremptory instruction directing a verdict in favor of the telephone company was also correct.

Wherefore, for the reasons stated, the judgment is affirmed.