**Gene THURMOND, Appellant,**

v.

**Ross CHUMBLER'S ADMINISTRATRIX (Wanda Chumbler), Appellee.**

Court of Appeals of Kentucky.

March 2, 1956.

George E. Overbey, Murray, for appellant.

Wells Overbey, Murray, for appellee.

MOREMEN, Judge.

Ross Chumbler died when Gene Thurmond's automobile, in which Chumbler was a passenger, overturned. Appellee Wanda Chumbler, administratrix of the estate of Ross Chumbler, brought suit against Thurmond for damages which resulted in a judgment in the sum of $10,000.

The appellee's decedent, Ross Chumbler, the appellant Gene Thurmond, Bobby Joe Cain, Melvin Barks and Watson Roberts, all residents of Murray, Ky., worked for the Carbide Chemical Corporation, whose plant was near Paducah, on the work shift that extended between 4 p. m. and midnight. All were members of a car pool under which arrangement each member, except Roberts, drove his car every fourth day.

On the morning of January 22, 1954, after the men had completed their night's work they entered appellant's car. Thurmond drove, Chumbler occupied the front seat, and the remaining members of the car pool occupied the back seat. The weather and road conditions were bad but nevertheless the party began their journey home.

The testimony well establishes that the road between Paducah and Mayfield was covered with slush or broken ice and that when the men reached Mayfield they en-

countered solid ice, but they continued their journey. About 2½ miles east of Mayfield and after passing a series of bridges over parts of a levee and at a time when appellant was driving at the rate of about 25 miles per hour, the automobile skidded off the highway, and turned upside down in a ditch filled with water. Before Chumbler could be extricated by his companions, he drowned.

The highway, which at this point was blacktop, was covered with a sheet of ice. The road was 18 feet wide and had an 8-foot shoulder on each side. The embankment was 12 feet high.

It was shown by the testimony that the appellant, before reaching a bridge about 480 feet from the scene of the accident, had decreased his speed, but after clearing the bridge, he had accelerated it to about 25 miles per hour. None of the occupants of the car had protested about the rate of speed at which he was driving. It was shown that at the point of the accident, the automobile first slid to the left side of the road and when the driver attempted to straighten it up, the car changed directions and slid off the right side of the road. Appellant testified he did not know when he released the accelerator and stated that he did not apply his brakes because he thought their application would do no good.

Appellee introduced a state trooper who had investigated the accident. He testified the road at this point was covered with solid ice and, in answer to a hypothetical question, stated it was his opinion that 15 miles per hour would have been a safe speed under the weather conditions prevalent at the time and place of the accident.

Appellant seeks reversal on the following grounds: (1) a motion for a directed verdict should have been sustained; (2) appellee improperly injected the question of insurance into the case and appellant's motion that the jury be discharged should have been sustained; (3) the instructions were erroneous and improper.

Appellant, in order to substantiate the argument that there was not sufficient evidence to take the case to the jury, relies upon O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S.W.2d 353; Risen v. Consolidated Coach Corp., 274 Ky. 342, 118 S.W.2d 712; Arthur v. Rose, 289 Ky. 402, 158 S.W.2d 652; and Atlantic Greyhound Corporation v. Franklin, 301 Ky. 867, 192 S.W.2d 753, in support of the proposition that the operator of a motor vehicle is not liable for injuries resulting from the skidding of his automobile on an icy road in the absence of evidence of improper speed or other negligent driving.

All the foregoing cases recognize the fact that an automobile may skid on a slippery road without negligence in its operation and the rule that the skidding of an automobile on such a road does not of itself summon the aid of the doctrine of res ipsa loquitur. However, it is difficult to understand the application of this rule in some of these cases.

In the O'Neil case [262 Ky. 377, 90 S.W. 2d 356], after recognizing the general rule about skidding, it is said:

"But skidding is a circumstance to be considered on a general issue of negligence, or, as in this case, upon the specific allegation of negligence through operation at an unreasonable speed, for skidding which is the result of excessive speed may justify a finding of negligence."

The court concluded there was a sufficient issue as to whether or not speed caused the skidding so the case should properly be submitted to a jury.

The Risen case involved a bus passenger's action for injuries sustained in a collision between the bus and an automobile sliding on an icy road. The accident occurred on Muldraugh's Hill, which is almost mountainous in proportions, and the testimony showed that the automobile, which was coming down the steep incline of an icy road, was traveling, at the time it commenced to skid, at a rate of "less than 20 miles per hour." [274 Ky. 342, 118 S.W.2d 714.] There was other testimony that the car was going faster but this was disregarded for

reasons stated in the opinion. The court held that: "There is no testimony whatever that the driver failed to do anything required of him to prevent the collision after the skidding began. It therefore necessarily follows that the peremptory instruction directing a verdict in favor of the telephone company (the automobile) was also correct." This is an opinion which is difficult for us to understand because the court quotes with approval from Tente v. Jaglowicz, 241 Ky. 720, 44 S.W.2d 845, a case of first impression, this language:

"'But it cannot be held, as a matter of law, that the operator of a car is necessarily negligent when it skids or slides on an icy street. The proper inferences from that fact are to be drawn by the jury.'"

In the Jaglowicz case, the maximum estimate of speed was that Jaglowicz was going 20 to 30 miles an hour, for one side, and other witnesses placed the speed at a lesser degree. Yet the court submitted the question of proximate cause on the theory that ordinary care requires a driver to consider the road on which he is driving as well as the consequences likely to flow from carelessness and held that it would not be presumed, as a matter of law, that the operator of a car is necessarily negligent when it skids on an icy street, and stated the proper inferences from that fact are to be drawn by the jury. In other words, the court, in the Jaglowicz case, held the jury might properly find from the fact that Jaglowicz had proceeded down a mild incline covered with ice at a speed from 20 to 30 miles an hour, that he was negligent. While in the Risen case, it was held that proceeding down an icy curve on a mountainous road, at a rate of speed "less than 20 miles per hour" was, as a matter of law, not negligence.

In the Arthur case, an infant was killed when a car slid to the curb and caught the infant in its bumper and the child was dragged along the street for some 300 feet. The opinion states that the driver was proceeding at a slow speed with his car in second gear. However, the case was sub-

mitted to the jury, the verdict was returned for the defendant, and the judgment entered was affirmed by this court on the ground that no improper speed was shown or other acts of negligent driving. The question of whether the driver was entitled to a directed verdict was not presented on the appeal because he had won his case in the lower court before the jury and was standing on the judgment.

In the Atlantic Greyhound Corporation case, there was a dispute concerning the speed of the bus before it started to skid. The driver placed the rate at 10 to 12 miles per hour. Other witnesses in the vicinity— some of them as far as 700 feet from the point of the accident—placed the rate of speed as high as 35 miles per hour, but under the disputed testimony, the court reversed the judgment, which was based upon the finding of the jury, with instructions to direct a verdict for the bus company should the evidence be substantially the same on the next trial.

■ So it may be seen from the above résumé that apparently it is a rule in this jurisdiction that the question of whether or not cases, such as these, should be submitted to the jury, may only be resolved by the facts of the individual case and that we have no hard and fast rules that fix the speed at which an icy road becomes dangerous for travel.

■ Our problem in this case is whether a speed of 25 miles per hour, at which appellant admittedly was traveling on a levee 12 feet high covered with ice, was such a rate of speed from which the jury, under the circumstances shown, could reasonably find that the driver had been negligent. It is the opinion of the majority of the court that the facts of this case are such as should properly be submitted to the jury and the trial court correctly overruled a motion for a directed verdict.

■ We have concluded there is merit in appellant's second contention, that appellee improperly injected the question of insurance before the jury. The appellee's attorney, in depositions taken for the pur-

pose of discovery, learned that appellant was insured and that the accident had been investigated for the insurance company by one Robert Taylor. At the trial counsel for appellee asked his client these questions:

"Q. Do you know a man by—just answer this question only—do you know a man named Robert E. Taylor? A. Yes.

"Q. Has he ever talked with you? A. Yes.

"Q. When? A. Right after my husband's death, about three weeks after.

"Q. Don't tell anything about the conversation—when was it? A. About three weeks after Ross passed away.

"Q. At the time Mr. Taylor talked with you, was he acting, or was he purporting to be acting on behalf of Gene Thurmond in the investigation of this accident?

"Defendant objects.

"Sustained.

"By Mr. Overbey: Isn't it proper to show that he investigated it, not beyond that?

"By the Court: You are getting too close to dangerous ground, I will sustain the objection there."

We think the above alone was sufficient to cause the jury to speculate as to just what Taylor's interest was in the matter and whom he represented, but, in addition, counsel called appellant Thurmond as if upon cross-examination and, over appellant's objection, questioned him about the nature of Robert Taylor's investigation and whether Taylor's investigation was conducted with or without his consent. We have, in a number of cases, including Helton v. Prater's Adm'r, 272 Ky. 574, 114 S.W.2d 1120, condemned subtle efforts to inject the question of insurance into a case and we believe the method used in this case falls in that category.

Finally appellant complains about the instructions. We think on the whole that the instructions fairly presented the issue to the jury with the exception of instruction No. 2 where the court did not insert the word,

"negligently," before the word, "failed." In Atlantic Greyhound Corporation v. Franklin, 301 Ky. 867, 192 S.W.2d 753, we pointed out that the insertion of the qualifying word is the better practice.

Judgment reversed and the case remanded for proceedings consistent with this opinion.