T. C. YOUNG CONSTRUCTION COMPANY,
Inc., et al., Appellants,

v.

Grant BROWN, Jr., Appellee.

Court of Appeals of Kentucky.

Nov. 15, 1963.

Company, collided with an automobile driven by Grant "Junior" Brown. In the accident Brown re-injured a collar bone that had been fractured a little over three weeks before. Thereafter the injury failed to respond normally to conservative treatment, and his physician deemed it necessary to remove the acromioclavicular joint in order to immobilize the clavicle and thereby conduce to a healing of the fracture. This procedure was successful and the bone did proceed to heal, but according to his medical witnesses Brown will be completely disabled from the performance of hard work and 25% to 30% disabled for lighter work. His suit against Hodges and the construction company resulted in a unanimous verdict and judgment in the amount of $46,000, from which the defendants appeal.

The first contention is that the evidence was insufficient to sustain a case of negligence.

The collision occurred at a place on U. S. Highway 119 in Bell County, Kentucky, called Tan Yard Hill. Brown was going up the hill, toward Pineville, and Hodge was coming down the hill in the opposite direction, toward Harlan. It was raining and the road was slick. As Brown rounded a curve to his left he saw the truck driven by Hodge approaching at a distance of some 200 to 250 feet. It was sliding and out of control. Brown pulled his car to the right against a guardrail and stopped, but the truck continued out of control and, in the wrong traffic lane, struck the left side of the automobile.

Hodge said he came over the crest of the hill and was on a straight stretch of the highway when the front end of his truck began sliding to the left. He cut his wheels as far to the right as possible, but to no avail. He testified that his speed was about 30 m. p. h. Brown, however, estimated it was 35 to 40 m. p. h., and another witness said Hodge told him at the hospital that he had been going "30 or 40" m. p. h. The truck was loaded.

William A. Rice, Harlan, J. C. Helton, Pineville, for appellants.

John J. Tribell, William S. Tribell, Middlesboro, for appellee.

PALMORE, Judge.

At about daylight on the morning of August 22, 1960, a pickup truck being driven by Albert Monroe Hodge on the business of his employer, T. C. Young Construction

■ There have been exceptional cases in which this court has held that the skidding of a vehicle into the wrong lane on a slippery road did not itself constitute enough evidence of negligence for submission to a jury. See Risen v. Consolidated Coach Corporation, 274 Ky. 342, 118 S.W.2d 712 (1938), and Atlantic Greyhound Corporation v. Franklin, 301 Ky. 867, 192 S.W.2d 753 (1946). Ordinarily, however, where a driver who is aware of the treacherous condition of the highway loses control of his vehicle there is at the very least a permissible inference of negligence sufficient to sustain a verdict to that effect. Rose v. Vasseur, Ky., 320 S.W.2d 608 (1958); Cain v. Wilkins, Ky., 314 S.W.2d 574 (1958); Clement Brothers Construction Co. v. Moore, Ky., 314 S.W.2d 526 (1958); Thurmond v. Chumbler's Administratrix, Ky., 287 S.W.2d 908 (1956); Works v. Winkle, 314 Ky. 91, 234 S.W.2d 312 (1950); Perkins v. Peek, 309 Ky. 652, 218 S.W.2d 668 (1949).[1]

■ We are of the opinion that there can be very little question as to the sufficiency of the evidence in this case to warrant a finding of negligence. Indeed, a closer question is raised by Brown's contention that the truck driver was negligent as a matter of law, but the verdict obviates a necessity to decide it.

It is next contended that the evidence relating to Brown's injuries did not justify an award of $46,000. As we have indicated, the principal injury was the disturbance or aggravation of the preexistent fracture, resulting in complications leading to removal of the acromioclavicular joint. There were, however, other injuries of a non-permanent nature from which Brown claimed to be suffering pain and discomfort at the time of the trial more than a year after the acci-

dent. He was in the hospital from October 11, 1960, to January 5, 1961, for treatment of and surgery upon the shoulder. His medical expenses resulting from the second injury totalled over $5500.[2] His medical witnesses fixed his permanent disability at a minimum of 25% to 30%, contingent on his adapting himself to a lighter occupation. A physical examination in August of 1961 elicited symptoms of nerve-root irritation in the shoulder presaging a "good possibility" of further symptoms in the future. Brown had been employed as a coal miner at some stage of his career but apparently had reached his highest earning power as a heavy equipment operator. In 1958 he earned $8559 working for a construction company, which went out of business shortly thereafter, and in 1959 his income dropped to $3800. He did not earn anything in 1960, having spent most of that year, prior to the accident, serving out a 300-day jail sentence for a liquor violation. He readily admitted having been convicted on several occasions of trafficking in alcoholic beverages.

■ The fair import of the medical testimony for Brown is that before the accident of August 22, 1960, the fracture sustained on July 30, 1960, was knitting satisfactorily and without incident, and that in the normal course of events and except for the re-injury it would have healed completely in another three weeks or so; but after the accident of August 22, 1960, X-ray films showed a definite disturbance, probably a re-fracture, and "we had nothing but trouble. * * * The fracture wasn't healing." On the basis of the most favorable conclusions the jury could reasonably have drawn from the testimony of Brown's witnesses, all of his disability is attributable to the accident of August 22, 1960.[3] Cf.

---

1. In Rose v. Vasseur the driver of a skidding vehicle on a highway wet from rain was held negligent as a matter of law. The same result was reached in Perkins v. Peek, but on the tenuous ground that the driver had regained control before the collision.

2. Some of the items in this enumeration appear to be rather inflated, but they were not successfully impeached.

3. The jury was properly instructed to limit any recovery to the effects of the second injury.

Louisville & Nashville Railroad Co. v. Mattingly, Ky., 339 S.W.2d 155, 160 (1960). We are unable to agree with appellants' contention that there was a failure of proof in this respect.

■ If the jury intended its verdict to cover the full amount of special damages, as seems likely, in round figures the award in this case for pain and suffering and loss of earning power was $40,000. Accepting the testimony of Brown's physicians at face value, as the jury had the right to do, he is 100% disabled to perform the only legitimate kinds of work for which he is qualified, at one of which he was able to earn $8559 during 1958. A reduction in this percentage of disability to a minimum of 25% to 30% depends upon the uncertainty of his becoming proficient in another line of work. At the time of the trial Brown was 39 years old and had a life expectancy of about 33 years. Neither we, the jury nor anyone else can assess the damage in such a case with any degree of exactitude or satisfaction; hence the familiar rule that a verdict will not be set aside for excessiveness unless it strikes the mind at first blush as having been given under the influence of passion or prejudice.

In a case arising in 1943 and involving much the same type of injury and disability, Francis v. Terminal R. Ass'n of St. Louis, 354 Mo. 1232, 193 S.W.2d 909 (1946), the Supreme Court of Missouri reduced from $40,000 to $25,000 an award to a 38-year old laborer (pipefitter's helper) earning $40 to $45 per week. A reading of the opinion indicates that the injuries may have been more extensive than Brown's, whereas Brown's 1958 income and qualifications as a heavy equipment operator evince a greater earning power. Balancing these differences and allowing for the decline in purchasing power of the dollar since 1946, we think the award approved in that case is reasonably comparable with the amount of the verdict here. It is liberal, but not so grossly excessive as to shock the conscience. Therefore, we are bound to accept it.

■ During the course of the trial strenuous objections were raised against the admission of certain X-ray films and portions of the medical testimony based upon them. The first point is that there was a failure to authenticate each film through the particular technician who took it. All were made at the Pineville Community Hospital at the direction of Dr. R. B. Baird, Jr. Both he and three hospital technicians, the only persons who took X-ray pictures at the hospital, identified the films introduced in evidence as having been made there. The main complaint seems to be that the three technicians could not say which of the respective films were taken by each of them. However, the doctor testified that they were the ones he ordered, that they showed the person of Brown at the various times indicated, and that they were accurate. We are of the opinion that the authentication, though not perfect, was sufficient. The pictures could hardly have been phonies without the connivance of Dr. Baird, and there is no suggestion of that.

■ Dr. Baird testified also that he had gone over some or all of the X-rays from time to time with Dr. William L. Patterson, of Knoxville, Tennessee, an orthopedic surgeon who visits the Pineville hospital bi-weekly as a special consultant, and that on one occasion he packaged the films and delivered them to Dr. Patterson. Dr. Patterson testified by deposition and, at the time of so testifying, no longer had the films in possession, having returned them to Pineville. He said, however, that the X-rays he studied were made at the hospital in Pineville, that he had procured them there, and that he had been able to sort and arrange them as to date and sequence. Counsel objected to all of Dr. Patterson's testimony based on the X-rays because their integrity had not been established and because they had not been on hand for purposes of cross-examination at the time the deposi-

tion was taken. Again, however, these are but niggling technicalities. Lawsuits must not stand or fall on trick objections. There can be no real doubt that the X-rays examined by Dr. Patterson were the ones taken at the direction of Dr. Baird at Pineville; and at the time Dr. Patterson's deposition was taken no point was made of the circumstance that the pictures were not immediately available. Had there been a serious desire for them the cross-examination could have been postponed until they could be procured. Certainly this particular objection was too late when first made during the reading of the deposition at the trial. CR 32.03(2).

The remaining assignments of error have to do with the closing arguments to the jury.

At some period between the accident on August 22, 1960, and his admission to the hospital on October 11, 1960, Brown apparently became dissatisfied with the progress of his recuperation and made 15 or 20 visits to an osteopath, Dr. Ausmus, who took several X-rays but was never called upon to testify in this proceeding. In his summation, counsel for the defending parties stated that although he did not know why the plaintiff had not produced Dr. Ausmus, he assumed it was because his testimony would not have helped the plaintiff's case. The court sustained an objection, and counsel was not permitted to continue that line of comment. Appellants contend that this was fair and proper comment and that they were prejudiced by the ruling.

The rule that under some circumstances a party's failure to produce a witness is a fit subject for fair comment does not apply when there is nothing to indicate that the witness has material information not otherwise proved. Chappel v. Doepel, 301 Ky. 622, 192 S.W.2d 809 (1946); Helton v. Prater's Adm'r, 272 Ky. 574, 114 S. W.2d 1120 (1938). Two doctors testified for each side in this case, and insofar as the defense was concerned the reasons for Brown's not using Dr. Ausmus were a mat-

ter of speculation pure and simple. For example, his evidence may have been cumulative and of too little additional value to justify the cost of having him appear or testify. Appellants cannot have been prejudiced by the exclusion of remarks expressing nothing more than conjecture.

Appellants were represented at the trial by Hon. William A. Rice and Hon. J. C. Helton. During the course of his closing address to the jury Hon. J. J. Tribell, counsel for Brown, made the remark that Mr. Helton had not to his knowledge been in the case until two days before the trial and that he (Tribell) had been negotiating with Mr. Rice for several months. The court sustained an objection and admonished the jury not to consider the statement, but overruled a motion to discharge the jury.

In support of their argument that the foregoing comment was so prejudicial that it could not be cured by admonition appellants cite Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570 (1940), and Elam v. Woolery, Ky., 258 S.W.2d 452 (1953). These cases hold that it is improper to inject into the trial offers or attempts to compromise. The word "negotiating" as used by counsel in this case certainly bore a connotation that falls within the proscription, and the remark was improper. However, we are not persuaded that it was prejudicial. Though often confounded by their decisions, we cannot assume that jurors are simpletons. It is common knowledge that efforts are made to settle practically all sizeable lawsuits. This does not make it a proper subject of discussion, but it does minimize the possibility of prejudice from its mere mention without disclosure of any harmful details. We do not believe that the statement was so damaging as not to be correctable by admonition.

Under cross-examination during the trial the appellant Hodge was pressed into admitting the accident must have been his fault. This, of course, was an opinion or conclusion on an issue that only the jury had the province to decide, but there was

no objection to the question and, if any of the jurors still entertained a doubt in that respect, the effect of this answer can be well imagined. Apparently unable to restrain his exultation at the posture in which the appellants thereafter found themselves, in his closing address to the jury counsel for Brown drew upon his imagination to portray a scene in which he said that after Hodge admitted the accident was his fault the lawyers for the defense took him over to the county attorney's office and told him he had "destroyed their lawsuit." Again, the court sustained an objection and admonished the jury not to consider the statement, but overruled a motion to discharge the jury.

It seems remarkable that a lawyer coming down the home stretch of a trial in as comfortable a position as counsel enjoyed in this case would risk the chance of clowning himself out of it. The comment was, of course, improper. Nevertheless, as in the case of his reference to "negotiations," we are of the opinion that it would be highly unrealistic to say under the surrounding circumstances that there was so substantial a likelihood of prejudicial effect that the admonition was inadequate to assuage it. The jury is bound to have realized that the appellants had no case on the issue of negligence anyhow.

The judgment is affirmed.